RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0262p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

STEPHEN MICHAEL MOBLEY,
　　　　　　　　　　*Defendant-Appellant.*

No. 08-4641

———————————

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 07-00097-001—Susan J. Dlott, Chief District Judge.

Argued: August 3, 2010

Decided and Filed: August 25, 2010

Before: COLE and McKEAGUE, Circuit Judges; MAYS, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Michael M. Losavio, Louisville, Kentucky, for Appellant. Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Michael M. Losavio, Louisville, Kentucky, for Appellant. Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

———————————

## OPINION

———————————

McKEAGUE, Circuit Judge. Stephen Michael Mobley, Jr., who pled guilty to both conspiracy to commit mail, wire, and bank fraud and aggravated identity theft, appeals, arguing that the district court lacked the factual basis required under FED. R.

---

[*] Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

CRIM. P. 11(b)(3) to enter judgment on his plea as to aggravated identity theft.  As the court had sufficient factual basis to conclude that Mobley used his wife's social security number to submit fraudulent credit applications "during and in relation to" the requisite predicate crime of wire fraud, we affirm Mobley's conviction.

## I.

On December 27, 2007, the government filed an information charging Mobley, a resident of Kettering, Ohio, with two counts: (1) conspiracy to commit mail, wire, and bank fraud in violation of 18 U.S.C. § 1349; and (2) aggravated identity theft in violation of 18 U.S.C. § 1028A.[1]  According to Count 2:

> On or about May 24, 2006, during and in relation to wire fraud (18 U.S.C. § 1341),[2] [Mobley] did knowingly possess and use, without lawful authority, a means of identification of another person, namely, the social security number of a person identified herein as K.M.

(R. 91 at 16.)  ("K.M." is Kelley Mobley, Stephen Mobley's wife.)  The following day, the government and Mobley filed a plea agreement under which Mobley waived indictment and agreed to plead guilty to both counts.

The district court accepted Mobley's plea at a hearing on January 16, 2008, at which time Mobley stated that he understood the charges and that his lawyer was fully informed about the facts and circumstances on which the charges were based.  Mobley also stated that he had received and read the information, and was waiving both indictment and the public reading of the information at the hearing.  Ron Verst, an officer with the Postal Inspection Service, then read the factual statement that was attached to the signed plea agreement:

> Beginning in December, 2005, the defendant, Stephen M. Mobley, conspired with Ted Bettker, George Nelson, Tony Stonerock, and Jason

---

[1]Mobley was originally indicted in July of 2007 on three counts, but that indictment was superceded by the December 2007 information.

[2]While Count 2 indicates that wire fraud is defined under 18 U.S.C. § 1341, in fact, § 1341 applies to mail fraud; wire fraud is governed by 18 U.S.C. § 1343.  The government states that the information "should have referenced '§ 1343'".

Smith and others to devise a scheme to obtain funds under the custody and control of Citibank . . . .

The conspiracy to execute a scheme to defraud Citibank was organized and directed by Mobley and generally involved opening fraudulent business credit card accounts. Mobley and his co-conspirators would open the fraudulent accounts by submitting account applications that were false in at least one material respect. The fraudulent accounts were opened by Mobley generally on-line in his name or under the name of one of his co-conspirators. Sometimes the application to open the fraudulent account would contain a false personal identifier. In other cases, the application would contain the real personal identifiers of co-conspirators who provided the information to Mobley in furtherance of the scheme to defraud and the name of a legitimate business entity but one with which the person in whose name Mobley was submitting the card was not affiliated.

Typically Mobley would approach other individuals about the scheme and would explain that the credit card companies write this stuff off and that once the account was opened in the individual's name, the individuals could use the credit as they wished to make purchases or obtain cash by depositing checks drawn on the account but would not need to make any payments. Mobley would offer to open a fraudulent account as described above on the condition that the individual in whose name the fraudulent Citibank account was opened give Mobley access via credit card or check drawn on the account to a certain percentage of the total credit line, usually 50 percent.

Mobley would obtain the personal identifiers of the individuals, the individual having agreed to participate in this scheme, thereby becoming a co-conspirator, as well as other information such as tax identification numbers of the individuals' businesses and submit a fraudulent business credit application to Citibank either on-line or over the telephone in the individual's name. Citibank would mail the credit cards for the account in whose name Mobley had opened the account. That individual or an agent of that individual would then deliver some or all of the credit cards to Mobley pursuant to the agreement reached. Mobley would activate the fraudulent cards and sometimes request checks from Citibank so that the credit authorized by Citibank could be converted to cash. Mobley and the other individuals would make purchases and write checks against the fraudulent Citibank business credit card accounts that Mobley had opened in their names.

In February, 2006, Mobley contacted Bettker regarding the scheme to defraud. They came to an agreement as outlined above. Mobley told Bettker that he could either pay off the credit card balances each month

or not pay it off; it wouldn't matter because Bettker was already in bankruptcy. Bettker provided Mobley with his Social Security number and other personal – personal information as well as the tax identification numbers for all of Bettker's business. Mobley told Bettker that he would be approved for three business credit card accounts totaling $55,000, two for $20,000, and one for $15,000. Bettker received the cards by mail and delivered the cards to Mobley.

On February 2nd, 2006, Mobley activated the cards by making an interstate telephone call to Citibank. Mobley kept one of the fraudulent cards with a $20,000 limit, gave Bettker's wife a fraudulent card with a $20,000 limit, and sent a third fraudulent card with a $15,000 limit via overnight service through the United States mail to Bettker who was working in Florida. Mobley and Bettker had an understanding that Mobley was entitled to 50 percent of the credit limit on the third card, i.e., $7,500. Subsequently, both Mobley and Bettker made purchases using the above-referenced fraudulent credit cards.

Based on the fraudulent applications submitted by Mobley under the name Kelley Mobley, using her Social Security number, and using the business name of The Gift Box, a legitimate business located in Columbus, Ohio, but with which Mobley's wife was not affiliated, Citibank on May 24th, 2006 authorized three business billing credit cards and three subaccounts . . . . These cards collectively held a credit limit of $65,000.

In addition to the conduct outlined above, defendants Nelson, Stonerock, and Smith provided Mobley with their personal identifiers, Social Security number, date of birth, et cetera, and other relevant information for the purpose of allowing Mobley to submit fraudulent business credit card applications pursuant to the respective agreements with Mobley . . . .

On March 23rd, 2006, Mobley opened or caused to be opened three fraudulent Citibank accounts in the name of L.W., a deceased individual and a relation of Stonerock. The fraudulent accounts were opening – opened using L.W.'s name but using a fraudulent Social Security number and under the business name of Bridgetech, a legitimate business located in Cincinnati, Ohio but one with which neither Mobley, Stonerock, nor L.W. was affiliated.

Various of the foregoing acts occurred in the Southern District of Ohio.

(Plea Tr. at 27-32.) When the district court asked whether Mobley was offering to plead guilty because he was "in fact guilty of the offenses charged in Counts 1 and 2," Mobley answered "yes." (Plea Tr. at 32.) Mobley was sentenced to serve 30 months on Count

1 and 24 months on Count 2; 12 of the 30 months imposed for Count 1 and all 24 of the months imposed for Count 2 were to be served consecutively to an undischarged 70-month sentence on a prior drug conviction.  The district court entered judgment on November 19, 2008.  This appeal followed.

## II.

Mobley argues that the district court erred by entering judgment on his guilty plea as to Count 2 of the information, as the court failed to ensure, as required by FED. R. CRIM. P. 11(b)(3), that there was a factual basis to determine that he had in fact committed aggravated identity theft in violation of 18 U.S.C. § 1028A.  In particular, Mobley argues that the district court lacked a factual basis demonstrating that: (1) Mobley had committed wire fraud; (2) Mobley had ever, without lawful authority, possessed or used the identification of another person; or (3) any of Mobley's actions occurred within the Southern District of Ohio.

Where, as here, a defendant does not present objections regarding any alleged Rule 11 violation to the district court, we review for plain error.  *See United States v. Lalonde*, 509 F.3d 750, 759 (6th Cir. 2007).  Plain error review involves four prongs:

> First, there must be an error or defect – some sort of "[d]eviation from a legal rule" – that has not been intentionally relinquished or abandoned . . . .  Second, the legal error must be clear or obvious, rather than subject to reasonable dispute.  Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the district court proceedings."

*Puckett v. United States*, --- U.S. ----, 129 S.Ct. 1423, 1429 (2009).  Fourth, if these three prongs are satisfied, then the court "has the *discretion* to remedy the error – discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"  *Id.* (emphasis in original).  To obtain relief for an unpreserved Rule 11 failing, "a defendant is obliged to show a reasonable probability that, but for the error, he would not have entered the plea."  *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004).  "A district court errs when it 'fails to comply with the clear mandate of a Federal Rule of Criminal Procedure,' and this error

is plain." *United States v. McCreary-Redd*, 475 F.3d 718, 722 (6th Cir. 2007) (quoting *United States v. Murdock*, 398 F.3d 491, 497 (6th Cir. 2005)).

According to FED. R. CRIM. P. 11(b)(3), "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." The purpose of this requirement "is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense." *McCreary-Redd*, 475 F.3d at 722 (quoting *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995)). Put another way, "[t]he purpose of this rule is 'to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" *Lalonde*, 509 F.3d at 762 (quoting *McCarthy v. United States*, 394 U.S. 459, 467 (1969)). The Rule "does not provide any guidance concerning the steps a district court should take to ensure that a factual basis exists." *McCreary-Redd*, 475 F.3d at 722 (quoting *United States v. Baez*, 87 F.3d 805, 809 (6th Cir. 1996)). As we have explained:

> The ideal means to establish the factual basis for a guilty plea is for the district court to ask the defendant to state, in the defendant's own words, what the defendant did that he believes constitutes the crime to which he is pleading guilty. So long as the district court ensures that the defendant's statement includes conduct – and mental state if necessary – that satisfy every element of the offense, there should be no question concerning the sufficiency of the factual basis for the guilty plea. This "ideal" method is by no means the only method, however. "We recognize that the district court may determine the existence of the . . . factual basis from a number of sources, including a statement on the record from the government prosecutors as well as a statement from the defendant." And, of course, it is possible that witnesses may be called to state the factual basis with the defendant providing confirmation.

*Tunning*, 69 F.3d at 112 (citation omitted). Critically, FED. R. CRIM. P. 11(b)(3) states that the district court should make the factual basis determination "[b]efore *entering judgment* on a guilty plea" – not, as in other subsections of Rule 11, "before *accepting* a plea." In reviewing whether a district court had a factual basis for a plea, then, we "may examine the entire record, including proceedings that occurred *after* the plea

colloquy." *McCreary-Redd*, 475 F.3d at 722 n.1 (emphasis in original) (quoting *Spiridigliozzi v. United States*, 117 F. App'x 385, 391 (6th Cir. 2004)).

Mobley pled guilty to Count 2 of the information, which stated that he violated 18 U.S.C. § 1028A. According to § 1028A(a)(1), "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." Among those felony violations enumerated in subsection (c) are any provisions "relating to mail, bank, and wire fraud." 18 U.S.C. § 1028A(c)(5). Before entering judgment on Count 2, therefore, the district court needed to have a factual basis for determining that Mobley knowingly used Kelley Mobley's social security number without lawful authority "during and in relation to" interstate wire fraud. Mobley also argues that the court needed to have a factual basis for determining that the crimes had occurred at least in part in the Southern District of Ohio.

## A. Venue in the Southern District of Ohio

Mobley's first argument is that the district court lacked a factual basis to determine that the acts leading to Count 2 of the information occurred within the Southern District of Ohio. Barring some exception, "the government must prosecute an offense in a district where the offense was committed." FED. R. CRIM. P. 18; *see also Johnston v. United States*, 351 U.S. 215, 220 (1956) ("[T]he place of the crime . . . is determined by the acts of the accused that violate a statute.") As the Supreme Court has explained, "where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (quoting *United States v. Lombardo*, 241 U.S. 73, 77 (1916)). Accordingly, "[v]enue may . . . be had in more than one location." *United States v. Williams*, 274 F.3d 1079, 1084 (6th Cir. 2001) (citing *United States v. Reed*, 773 F.2d 477, 480 (2d Cir. 1985)).

As a threshold matter, we conclude that the factual basis requirement of Rule 11(b)(3) does not apply to consideration of venue. Rule 11(b)(3) explicitly and without

exception prohibits district courts from entering judgment in the absence of a factual basis for a guilty plea; in other words, defendants cannot waive this requirement, even if they wish to do so. In contrast, however, defendants *can* waive venue objections; in at least some cases, moreover, defendants automatically waive venue objections simply by pleading guilty. *See United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005) ("Objections to defects in venue are usually waived if not asserted before trial . . . ."); *see also United States v. Calderon*, 243 F.3d 587, 590 (2nd Cir. 2001) ("Having entered a valid plea, Calderon's objection as to venue is waived. . . . Venue is not jurisdictional . . . ."); *United States v. Brown*, 583 F.2d 915, 918 (7th Cir. 1978) ("[D]efendant's asserted venue protection . . . is subject to waiver by his guilty plea."); *United States v. Semel*, 347 F.2d 228, 229 (4th Cir. 1965).[3] As the factual basis requirement of Rule 11(b)(3) for a plea cannot be waived, and as objections even as to clearly-defective venue *can* be waived, then consideration of venue cannot be part of the required 11(b)(3) factual basis determination. Accordingly, it is irrelevant to Mobley's appeal, which is wholly based on 11(b)(3), whether the court had any factual basis to determine the location of any alleged criminal acts.[4]

Even if Mobley were correct that Rule 11(b)(3) requires district courts entering judgment to have a factual basis regarding venue, there is ample evidence in the record to meet this requirement. As part of the statement of facts read at the plea hearing, for example, Verst stated that Mobley, who lived in the Southern District of Ohio, submitted "fraudulent applications . . . under the name Kelley Mobley, using her Social Security

---

[3] Mobley's contention that venue is jurisdictional and so cannot be waived by failure to object prior to entry of judgment is simply incorrect. *See Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir. 1978) ("[T]he issue of venue is not a jurisdictional issue. . . . venue is likewise a privilege granted to the accused rather than a jurisdictional prerequisite.").

[4] Although he did not clearly raise this argument in his briefs, we also note that, by pleading guilty, Mobley waived any straightforward venue objection. In *Grenoble*, 413 F.3d at 573, we acknowledged the general rule that objections to venue are usually waived if not asserted before trial, but added that "a conclusion of waiver [of venue after a guilty plea] is not appropriate" where both: (1) the defect is not "apparent on the face of the indictment"; and (2) "the defendant does not have notice of the defect through other means." An indictment is "defective on its face if it alleges facts which, if proven, would not sustain venue in the district where the defendant is to be tried." *United States v. Adams*, 803 F.2d 722, 1986 WL 17714, at *9 (6th Cir. Sept. 22, 1986) (unpublished). Here, Count 2 (unlike Count 1) said nothing at all about the location of any criminal act; even if all of the allegations of Count 2 were proven, that proof *by itself* would not sustain venue in the Southern District of Ohio. Any defect as to venue in Count 2 was thus apparent on the face of the information.

number, and using the business name of The Gift Box, a legitimate business located in Columbus, Ohio, but with which Mobley's wife was not affiliated." (Plea Tr. at 30.) Verst also explained that "various of the . . . acts [described in the statement of facts] occurred in the Southern District of Ohio." (Plea Tr. at 32.) More importantly, Count 1 of the information, to which Mobley pled guilty and the factual basis of which he has not contested, stated that in furtherance of his scheme to defraud Citibank by filing fraudulent applications, "[Mobley] knowingly and unlawfully transmitted and caused to be transmitted . . . interstate telephone and online communications, all to and from outside the Southern District of Ohio to and from the Southern District of Ohio . . . ." (R. 91 at 7-8.) Even if such a general statement might not be sufficient to prove venue at trial, the quantum of information required to satisfy the Rule 11(b)(3) "factual basis" requirement for a guilty plea is lower. *Cf. McCreary-Redd*, 475 F.3d at 722 (noting that the factual basis requirement is met by "some evidence" that a defendant actually committed the offense); *Tunning*, 69 F.3d at 111 (concluding that the factual basis requirement never requires "strong evidence of actual guilt," but rather only sufficient evidence for the court to "satisfy it[self] that there is a factual basis . . . .").

### B. Knowing and Unlawful Use of Kelley Mobley's Social Security Number

Mobley's second argument is that the district court lacked a factual basis to determine that he "knowingly transfer[d], possesse[d], or use[d], without lawful authority, a means of identification of another person." *See* 18 U.S.C. § 1028A(1). Mobley's reasoning here is not entirely clear. While he cites *Flores-Figueroa v. United States*, 129 S. Ct. 1886 (2009), in an attempt to demonstrate that the district court lacked the necessary factual basis, the Supreme Court in that case simply found that the aggravated identity theft statute requires the government to prove "that the defendant knew that the 'means of identification' he or she unlawfully transferred, possessed, or used, in fact, belonged to 'another person'" – and was not, for example, a fake ID. 129 S. Ct. at 1888. Mobley, of course, knew that in using his wife's identity he was using the identity of "another person"; he admitted that he submitted "fraudulent applications" under his wife's name, "using her Social Security number". According to the

Presentencing Investigation Report prepared by the United States Probation Office, moreover, "[o]n August 25, 2006, Mobley used the Social Security Number of another person without their permission." (PSR at 4.) The district court thus clearly had a factual basis for determining that Mobley "knowingly" used Kelley Mobley's identification. That a defendant's use of *any* social security number – including his own – to submit fraudulent credit applications must be "without lawful authority" is obvious. *Cf. United States v. Hines*, 472 F.3d 1038, 1040 (8th Cir. 2007) ("Whether [the defendant] used Miller's name without permission [in trying to hide his identity from police] . . . or he obtained Miller's consent in exchange for illegal drugs, [the defendant] acted without lawful authority when using Miller's identification.").

Accordingly, we find that the district court had a factual basis to determine that Mobley knowingly used the identification of another (here Kelley Mobley) without lawful authority.

### C. "During and In Relation To" Wire Fraud

Mobley's third argument is that the district court lacked a factual basis to determine that any misuse of Kelley Mobley's identification came "during and in relation to" interstate wire fraud, the predicate felony required for him to be guilty of aggravated identity theft under 18 U.S.C. § 1028A.

The record demonstrates clearly that, as part of his scheme to defraud, Mobley engaged in wire fraud. A defendant commits wire fraud when, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," that defendant "transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice . . . ." 18 U.S.C. § 1343. According to the statement of facts, as part of his scheme Mobley would "submit a fraudulent business credit application to Citibank either on-line or over the telephone in the individual's name." (Plea Tr. at 29.) He would then "activate the fraudulent cards and sometimes request checks from Citibank . . . ." (Plea Tr. at 29.) After arranging for

cards to be obtained for Bettker, Mobley on February 2, 2006 "activated the cards by making an interstate telephone call to Citibank." (Plea Tr. at 30.) More importantly, as noted in Count 1 of the information, Mobley submitted the fraudulent applications "either online or over the telephone . . . ." (R. 91 at 2-3.) According to the critical paragraph of the charge:

> In furtherance of the scheme . . . [Mobley] knowingly and unlawfully transmitted and caused to be transmitted in interstate commerce, by means of wire communications, certain signs, signals, and sounds, that is, interstate telephone and online communications, all to and from outside the Southern District of Ohio to and from the Southern District of Ohio . . . .

(R. 91 at 7-8.) The language of Count 1 – to which, again, Mobley pled guilty and which he has not contested – mirrors closely the explicit language of the wire fraud statute.

The closest question raised in this appeal is whether the district court had a factual basis to determine that any use of Kelley Mobley's identification was "during and in relation to" the wire fraud as required by the aggravated identity theft statute. *See* 18 U.S.C. § 1028A. As the government concedes, the statement of facts "does not expressly articulate" that Mobley submitted a fraudulent application *using Kelley Mobley's information* through interstate wire communication. Citing *Smith v. United States*, 508 U.S. 223, 236-37 (1993), however, the government argues that we should read the "during and in relation to" element broadly so as to find that Mobley can be convicted on Count 2 provided that he engaged in *some* wire fraud as part of the scheme during which he used Kelley Mobley's social security number, regardless of whether the wire fraud actually involved the use of that social security number. Mobley counters that we should not construe the "in relation to" phrase of § 1028A expansively, as the "element of identity theft is inherently part of the fraud such that a passing connection does not meet the intent of Congress or the ends of justice in using this enhancement penalty lightly." (Mobley Reply Br .at 9.)

We conclude that a broad reading of "during and in relation to" is reasonable and appropriate. In *Smith*, in which the Supreme Court found that a defendant had "used" a firearm "during and in relation to" a drug trafficking crime within the meaning of 18 U.S.C. § 924(c)(1) when he traded the gun for drugs, the Court explicitly examined the meaning of the key phrase:

> The phrase "in relation to" is expansive, *cf. District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125, 129 (1992) (the phrase "relate to" is "deliberately expansive" (internal quotation marks omitted)), as the Courts of Appeals construing § 924(c)(1) have recognized, *United States v. Phelps*, 877 F.2d 28, 30 (9th Cir. 1989) ("[t]he phrase 'in relation to' is broad"); *United States v. Harris*, 959 F.2d 246, 261 (D.C. Cir. 1992) (per curiam ) (firearm is used "in relation to" the crime if it "facilitate[s] the predicate offense in some way"). Nonetheless, the phrase does illuminate § 924(c)(1)'s boundaries. According to Webster's, "in relation to" means "with reference to" or "as regards." WEBSTER'S NEW INTERNATIONAL DICTIONARY 2102 (2d ed. 1939). The phrase "in relation to" thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence. As one court has observed, the "in relation to" language "allay[s] explicitly the concern that a person could be" punished under § 924(c)(1) for committing a drug trafficking offense "while in possession of a firearm" even though the firearm's presence is coincidental or entirely "unrelated" to the crime. *United States v. Stewart*, 779 F.2d 538, 539 (9th Cir. 1985) (Kennedy, J.). Instead, the gun at least must "facilitat[e], or ha[ve] the potential of facilitating," the drug trafficking offense. *Id.*, at 540.

*Smith*, 508 U.S. at 237-38. As we recognized in *United States v. Warwick*, 167 F.3d 965, 971 (6th Cir. 1999), the Court's decision in *Smith* amounts to a "broad reading" of "in relation to," and means that the "in relation to" element of § 924(c)(1) "is met if the gun facilitates or has the potential of facilitating the drug trafficking offense."

By analogy to *Smith,* we therefore read the phrase "in relation to" in § 1028A as, at a minimum, clarifying that the identity theft must have "some purpose or effect with respect to" the predicate crime. This means that the "in relation to" element is met if the identity theft "facilitates or has the potential of facilitating" that predicate felony. *See Warwick*, 167 F.3d at 971. Given this reading, we find that the district court had

sufficient factual basis to determine that Mobley's unlawful use of his wife's identity was "during and in relation to" the wire fraud.  The statement of facts and the information make clear that Mobley used his wife's social security number as part of an expansive scheme to defraud Citibank, that as a regular part of that scheme he repeatedly engaged in interstate wire fraud by submitting online applications, and that he specifically submitted "fraudulent applications . . . under the name Kelley Mobley, using her Social Security number . . . ."  (Plea Tr. at 30.)  Put another way, the acts described in Count 2 comprised a means by which Mobley sought to accomplish the acts described in Count 1.  Mobley's identity theft thus clearly either facilitated or "had the potential of facilitating" the wire fraud.  *See Warwick*, 167 F.3d at 971.

### III.

In his briefs, Mobley makes an undeveloped argument that the district court also failed to abide by the dictates of FED. R. CRIM. P. 11(b)(1)(G), which provides that, before accepting a guilty plea from a defendant, the district court must determine that the defendant understands "the nature of each charge to which the defendant is pleading."  This requirement is "'integrally related' to Rule 11(b)(3)'s mandate that the district court determine that the guilty plea has a factual basis."  *United States v. Page*, 520 F.3d 545, 547 (6th Cir. 2008) (quoting *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004)).  "We consider issues not fully developed and argued to be waived." *Children's Center for Developmental Enrichment v. Machle*, --- F.3d ----, 2010 WL 2794193, at *5 n.3 (6th Cir. 2010) (quoting *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995)).  Even had Mobley developed this argument in his briefs, moreover, as he failed to raise any objection before the district court, we would similarly review for plain error.  *Puckett*, 129 S.Ct. at 1429.  Mobley makes only one claim regarding his knowledge of the charges: that, as he did not in fact commit the crime of aggravated identity theft, he would never have pled guilty if he *had* understood the charges, and so his guilty plea alone demonstrates that he did not.  As we have concluded, however, the district court had ample factual basis to determine that Mobley committed this crime. Mobley, moreover, answered "yes" when asked by the court whether he was "in fact

guilty of the offenses charged in Counts 1 and 2." As in *Page*, here, "[w]hile less than a model of clarity, the totality of the record supports the government's argument that the district court established . . . [that the defendant] understood the nature of the charge to which he pled guilty." *Page*, 520 F.3d at 548. Accordingly, we find that Mobley has failed to demonstrate that the district court committed plain error in accepting his plea.

## IV.

We began by finding that, in satisfying the "factual basis" requirement of FED. R. CRIM. P. 11(b)(3) before entering judgments on guilty pleas, district courts need not consider venue. Given the meaning the Supreme Court attached in *Smith*, 508 U.S. at 237-38, to the phrase "during and in relation to," we also find that the unlawful transfer, use, or possession of another's means of identification within the meaning of 18 U.S.C. § 1028A is "in relation to" the predicate felony required by the identity theft statute if the transfer, use, or possession "facilitates or has the potential of facilitating" that predicate felony. Given these two holdings, we find that in this case, before entering judgment on Mobley's guilty plea, the district court had a factual basis to conclude that Mobley knowingly and unlawfully used his wife's social security number "during and in relation to" wire fraud. We also find that Mobley has not demonstrated that the district court committed plain error in determining that he understood the nature of the charges against him. Accordingly, we **AFFIRM** Mobley's conviction.