**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0078n.06

**No. 10-5598**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Feb 04, 2011**

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CHESTER JONES, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MOORE, SUTTON and McKEAGUE, Circuit Judges.

SUTTON, Circuit Judge. Chester Jones pleaded guilty to one count of aiding and abetting mail fraud. After he signed the plea deal, the Supreme Court decided *Skilling v. United States*, __ U.S. __, 130 S. Ct. 2896 (2010), which narrowed the scope of "honest services" fraud, prompting Jones to argue that the factual basis for his plea did not state a crime and that the plea agreement should be set aside. Because the factual basis for his plea covered two theories of mail fraud, one no longer permitted yet one still permitted, and because the challenges to his sentence also fall short, we affirm.

I.

In November 2008, Chester Jones was the chairman of the executive committee of the Perry County Democratic Party and a candidate for the Perry County School Board. A few days before

the 2008 election, the Kentucky Democratic Party gave the committee $7,500 to assist its get-out-the-vote efforts. Jones accepted the money but had other ideas for using it. He and Sherman Neace, a candidate for county magistrate, handed out 75 $100 checks to Perry County voters, each with an "express or implied request[]" that the recipients and their families vote for Jones and Neace. R.1 at 3.

Jones and Neace tried to cover up the tracks of their vote-buying scheme. They asked the recipients of the checks to sign a contract saying that the committee had hired them as last-minute get-out-the-vote workers. The contracts provided that each recipient would work for ten hours at a rate of ten dollars per hour. In some cases, the recipient signed the contract; in other cases, Jones forged the recipient's signature.

On November 8, 2008, Jones told committee members that he had hired the "workers" and that they had supported the party's get-out-the-vote efforts. Four days later, Jones presented the phony contracts to the committee. Kentucky law requires county party organizations to submit post-election expenditure reports to the state board of elections. Ky. Rev. Stat. § 121.180(4). Relying on Jones' misrepresentations, the committee secretary filled out the committee's expenditure report, saying (falsely) that the committee had spent the $7,500 on legitimate get-out-the-vote activities, and mailed the report to the relevant Kentucky authorities.

In 2009, a grand jury in the Eastern District of Kentucky charged Jones with one count of aiding and abetting mail fraud, 18 U.S.C. §§ 2, 1341, 1346, and one count of conspiring to commit

mail fraud and vote buying, 18 U.S.C. § 371. Jones signed a plea agreement in which he pleaded guilty to one count of aiding and abetting mail fraud. The district court sentenced Jones to twelve months' imprisonment.

## II.

On appeal, Jones argues that we should vacate his conviction in the aftermath of *Skilling*, 130 S. Ct. 2896, which limited the scope of "honest services" mail fraud and which was decided one month after the district court sentenced him. In view of *Skilling*'s interpretation of the scope of the mail-fraud statute, Jones says, he pleaded guilty to conduct that has "been determined by the Supreme Court not to be a crime." Jones Br. at 9.

The question in this setting is often, though not exclusively, whether a sufficient factual basis under Criminal Rule 11 supports the defendant's plea agreement, even after the defective legal theory is removed as a cognizable basis for the plea. *See, e.g.*, *United States v. Mobley*, 618 F.3d 539, 544–47 (6th Cir. 2010); *United States v. Whitley*, No. 97-5949, 1999 WL 16471, at *3–4 (6th Cir. Jan. 8, 1999); *see also United States v. Mitchell*, 104 F.3d 649, 652–54 (4th Cir. 1997); *United States v. Cruz-Rojas*, 101 F.3d 283, 285–87 (2d Cir. 1996); *United States v. Damico*, 99 F.3d 1431, 1434–35 (7th Cir. 1996); *United States v. Rivas*, 85 F.3d 193, 194–96 (5th Cir. 1996). Rule 11 of the Federal Rules of Criminal Procedure requires district courts to "determine that there is a factual basis for the plea" before entering judgment on a plea of guilty. Fed. R. Crim. P. 11(b)(3). Rule 11's factual-basis requirement "is designed to protect a defendant who is in the position of pleading

voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *McCarthy v. United States*, 394 U.S. 459, 467 (1969) (citation and internal quotation marks omitted). A district court may establish the factual basis for a plea from many sources, including the defendant's own words, a statement by the prosecutor and the facts in a plea agreement expressly acknowledged by the defendant to be accurate. *Mobley*, 618 F.3d at 545. Jones did not contest the validity of his plea before the district court, requiring us to review this claim for plain error. *Id*. at 544.

The mail-fraud statute prohibits individuals from using the mail to carry out a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," 18 U.S.C. § 1341, which includes "a scheme or artifice to deprive another of the intangible right of honest services," 18 U.S.C. § 1346. The "intangible right of honest services," *Skilling* observed, is imprecise, and broad applications of the phrase raise serious constitutional questions, particularly in the context of criminal prosecutions. 130 S. Ct. at 2929–31. The Court, as a result, construed "honest services" mail fraud to cover only schemes in which the individual deprives another of his honest services by participating in a bribery or kickback scheme. *Id.* at 2931.

*Skilling* overruled one line of honest-services decisions but left intact other theories of fraud. On one side of the line, the Court prohibited prosecutions that merely involve breaches of fiduciary duties but not bribes or kickbacks. 130 S. Ct. at 2928, 2932. On the other side of the line, the Court left undisturbed other types of prosecutions for fraud, including "money-or-property" mail fraud, *id.*

at 2934, in which a defendant "obtain[s] money or property by means of false or fraudulent pretenses," 18 U.S.C. § 1341.

The problem for Jones is that the prosecution's theory of the case covered both types of mail fraud. Had the plea agreement turned only on a legally invalid form of honest services mail fraud, we could grant him relief. *See, e.g.*, *United States v. Galaviz*, Nos. 94-2403, 94-2463, 1996 WL 403115, at *4 (6th Cir. July 17, 1996) (vacating § 924(c) conviction after *Bailey v. United States*, 516 U.S. 137 (1995)). But that is not what the indictment or the plea agreement said. The indictment covered both theories, saying that Jones "devised and intended to devise a scheme and artifice to defraud the [committee], to obtain money from the [committee] by false and fraudulent pretenses, *and* to deprive the [committee] of the honest services of JONES." R.1 at 2 (emphasis added). Accordingly, to the extent Jones means to argue that the indictment raised only an invalid honest-services theory, he is wrong. The plea agreement, moreover, does not even mention "honest services" or § 1346, *see* R.75, but continues to mention that Jones "distributed" the party's money "to influence check recipients and their families to vote for the Defendant," R.75 at 2, making it difficult to maintain that the plea rested on a legally invalid form of mail fraud. At worst, the plea covered two theories of mail fraud, one of which remains valid.

The plea agreement also provided a factual basis for money-or-property mail fraud, which consists of three elements: "(1) a scheme or artifice to defraud; (2) use of mails in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Turner*, 465 F.3d 667, 680 (6th Cir. 2006); *see* 18 U.S.C. § 1341. A "scheme or artifice to defraud" necessarily

involves "material misrepresentations"—that is, representations that the defendant "knew were false and that would have affected a reasonable person's actions in the situation." *United States v. Daniel*, 329 F.3d 480, 486–87 (6th Cir. 2003). Fraud "includes . . . the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another." *Carpenter v. United States*, 484 U.S. 19, 27 (1987) (internal quotation marks omitted).

The factual statement in the plea agreement lays out each element. First, it states that Jones "knew that the[] bogus labor contracts would be reported to [Kentucky election officials] as legitimate expenses." R.75 at 2. Second, it states that Jones knew that "the secretary of [the committee] would utilize the mail to send in" the election report that falsely claimed that the committee had used the $7,500 for legitimate get-out-the-vote activities. R.75 at 2. Third, it states that Jones' scheme involved a plan to use funds designated for get-out-the-vote purposes "to influence check recipients and their families to vote for the Defendant." R.75 at 2. He told the Committee that he had "hire[d]" the individuals when in fact he "did not expect the check recipients to actually do any work for the check." R.75 at 2. And he made material misrepresentations about his expectations for the check recipients in order "[t]o give credibility to the 'hiring' of workers scheme." R.75 at 2. Jones used the party's money for his own personal use. Instead of hiring workers to help Democratic candidates, he bought votes for his own campaign. When someone appropriates an organization's funds to his own use, he necessarily has deprived the organization of those funds. That the party may have received an ancillary benefit from the scheme—more votes for Democratic candidates—does not change the reality: Jones deprived the committee not only of

his honest services but of its funds as well. The plea agreement thus provided a sufficient factual

basis for a money-or-property mail fraud theory, because Jones acknowledged the facts in the plea

agreement to be true "to the best of [his] knowledge" and "plead[ed] guilty to all of it." R.89 at

29–30.

Nothing that Jones, his counsel or the district court said during the plea colloquy indicated

he wished to plead guilty only to "honest services" mail fraud. The existence of *Skilling* was no

secret to anyone, as Jones' rearraignment, on January 28, 2010, occurred after the Supreme Court

granted certiorari in *Skilling* and two companion cases, and indeed after two of the three cases

already had been argued at the Court. *See United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009),

*cert. granted*, 130 S. Ct. 393 (Oct. 13, 2009) (No. 08-1394); *United States v. Weyhrauch*, 548 F.3d

1237 (9th Cir. 2008), *cert. granted*, 129 S. Ct. 2863 (June 29, 2009) (No. 08-1196); *United States

v. Black*, 530 F.3d 596 (7th Cir. 2008), *cert. granted*, 129 S. Ct. 2379 (May 18, 2009) (No. 08-876).

Yet Jones did not restrict the plea to any one theory contained in the indictment.

Nor is this a case in which the district court characterized the scheme as only a deprivation

of "honest services." The language used by the district court and the prosecutor, like the language

of the indictment, generally referred to "aiding and abetting in mail fraud involving an election," not

just to "honest services" mail fraud. R.89 at 18.

Jones gets no further in suggesting that "the government agreed" in statements at sentencing

that Jones pleaded guilty only to honest-services mail fraud. *See* Jones Br. at 8. "This was an

intangible rights case," the prosecutor said at sentencing, "and the indictment alleges that the defendant owed a duty of honest services." R.91 at 12. For starters, Jones overstates his case. Moments after characterizing Jones' prosecution as an "intangible rights case," the prosecutor noted that Jones "had stolen the money" and "engaged in an elaborate fraud scheme designed to conceal the taking of the money." R.91 at 12–13. In other words, the prosecutor also argued that Jones committed money-and-property fraud. More importantly, both the indictment and the plea agreement laid out a money-or-property fraud theory. What matters is what the plea agreement says, and nothing in the sentencing hearing altered the legal reality that Jones pleaded guilty to both theories.

We have some company in rejecting this type of claim. This court has regularly affirmed convictions where the government prosecuted a defendant under two theories of liability, the defendant's guilty plea encompassed both theories and an intervening judicial decision undermined *one* of the theories. Take *United States v. Riascos-Suarez*, where the defendant argued that, in light of an intervening United States Supreme Court decision, his plea admitting to both the "use" and "carry" prongs of § 924(c) lacked a sufficient factual basis. 73 F.3d 616, 619, 622 (6th Cir. 1996), *abrogated on other grounds by Muscarello v. United States*, 524 U.S. 125 (1998). "The facts offered by the Government against Riascos-Suarez," we concluded, "suffic[ed] to find that he *carried* the gun in order to further the conspiracy to possess cocaine," *id.* at 624 (emphasis added), notwithstanding that "[u]nder *Bailey*, Riascos-Suarez [could not] be convicted of '*using*' the firearm," *id.* at 623 (emphasis added). The same happened in *United States v. Franklin*, No.

95-5875, 1996 WL 428413 (6th Cir. July 30, 1996). The court "agree[d] . . . that the record [did]

not support his conviction under the 'use' prong of § 924(c)," yet it held that "the record contain[ed]

more than adequate evidence that Franklin 'carr[ied]' a weapon 'during and in relation to' a drug

trafficking crime within the meaning of § 924(c)." *Id.* at *5; *see also Harris v. United States*, No.

95-6438, 1997 WL 280191, at *3–4 (6th Cir. May 23, 1997). Other courts have reached similar

conclusions in similar settings. *See Damico*, 99 F.3d at 1434–35; *Rivas*, 85 F.3d at 195–96; *United

States v. Hartman*, No. 90-50123, 1991 WL 7147, at *1 (9th Cir. Jan. 25, 1991); *Ranke v. United

States*, 873 F.2d 1033, 1037 (7th Cir. 1989).

One final wrinkle. The district court did not order restitution, which is odd given that the

Mandatory Victims Restitution Act, applicable to cases involving an "offense against property under

this title . . . including any offense committed by fraud or deceit," says that sentencing courts "*shall

order* . . . that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1),

(c)(1)(A)(ii) (emphasis added). The provision applies exclusively to cases where an identifiable

victim has suffered "physical injury or pecuniary loss," § 3663A(c)(1)(B), which may not happen

when the victim has been deprived only of the "intangible right of honest services." The district

court's decision not to order restitution, one might argue, suggests that the government and the court

viewed the case as one implicating only "honest services," not money-or-property, fraud. But that

is not a necessary inference or even a probable one. Prosecutors, like criminal defense lawyers and

courts, make oversights, and it is just as likely that this is all that happened here. None of this, at any

rate, alters this dispositive reality: The indictment charged both theories, the plea agreement

supplied a factual basis for both theories and Jones pleaded guilty to both theories.  In the final analysis, the district court did not commit plain error in permitting this plea agreement to supply the predicate for Jones' conviction.

In view of this conclusion, we need not reach an alternative ground for rejecting this appeal. The plea agreement contains an appellate-waiver provision, the applicability of which we need not resolve.  *See* R.75 at 3 ("The Defendant waives the right to appeal and the right to attack collaterally the guilty plea and conviction."); *see also United States v. Caruthers*, 458 F.3d 459, 472 & n.6 (6th Cir. 2006).

III.

Jones separately raises three sentencing issues:  (1) that we should remand for resentencing because *Skilling* changed the "nature and circumstances" of his offense; (2) that the district court should not have enhanced his sentence for "abuse of trust"; and (3) that the district court should not have enhanced his sentence by four levels for his leadership role in the scheme.

*"Nature and Circumstances of the Offense."*  The first argument is a variation on Jones' challenge to the sufficiency of the factual basis of his plea, and it meets the same fate.  District courts must consider "the nature and circumstances of the offense" in sentencing a defendant, 18 U.S.C. § 3553(a)(1), and the district court did so.  All that happens at this stage of a criminal case is that the court considers the nature and circumstances of what the defendant did, not the precise scope of the underlying criminal statute.  Because the guilty plea covered a cognizable form of mail fraud and

because the district court considered the nature of the offense at sentencing, Jones has no basis for vacating the sentence on this ground.

*"Abuse of Trust."* The district court increased Jones' offense level by two levels because he "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. A position of trust entails "considerable" "professional or managerial discretion." U.S.S.G. § 3B1.3 app. n. 1.

As chairman of the executive committee of the Perry County Democratic Party, Jones held a position of trust. He exercised considerable control over the committee's affairs, including fiduciary responsibility over the "funds that were provided by the Kentucky Democratic Party," R.91 at 19, and general responsibility "to make sure things are carried out in a lawful way," R.91 at 18. These responsibilities gave Jones "considerable" "professional or managerial discretion."

Jones persists that he was more like a bank teller than a bank executive and that his duties were more ministerial than discretionary. Jones Br. at 13–14; *see also* U.S.S.G. § 3B1.1 app. n. 1. But he offers no proof that this was so, and the evidence in the record cuts the other way. Jones concedes that he had discretion to make the decision to accept funds from the state Democratic party without consulting committee members. And Jones had authority over whether the committee would accept the funds, how it would spend them and how the committee secretary would report the use of them. All of this suffices to occupy a position of trust. *See United States v. Young*, 266 F.3d 468, 475, 481 (6th Cir. 2001).

Jones adds that a sentencing court may apply the enhancement only "where the defendant abused a position of trust with the victim of his charged conduct," *United States v. White*, 270 F.3d 356, 371 (6th Cir. 2001), and there was no cognizable victim here because the crime had "no effect whatsoever on the[] [committee's] fiscal bottom line." Jones Br. at 12. "The money came to them to be handed out," he argues, "and it was handed out." Jones Br. at 11–12. Yet economic loss is not a necessary element of § 3B1.1. *United States v. Sedore*, 512 F.3d 819, 826 (6th Cir. 2008). Money authorized to be spent for one purpose but stolen for another, moreover, amounts to a loss, as any individual robbed on the way to the grocery store could attest. *Cf. Ratliff v. United States*, 999 F.2d 1023, 1024, 1027 (6th Cir. 1993) (government worker who diverted Coal Miner Worker's Compensation Benefits to those who were not entitled to them caused "loss" for restitution purposes).

*"Organizer or Leader."* The district court enhanced Jones' offense level by four levels because he was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Jones objects because his co-defendant Neace received only a three-level enhancement as "a manager or supervisor (but not an organizer or leader)." U.S.S.G. § 3B1.1(b).

The Application Notes to § 3B1.1 list seven factors for sentencing courts to consider: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal

activity, and the degree of control and authority exercised over others." *Id.* app. n. 4. The record supports the district court's enhancement, in large part because Jones chaired the committee. As chairman, he had access to and discretion over the blank checks; he could give Neace some of the checks, thereby bringing him into the scheme; he had access to the form contracts that the "workers" filled out; he could trick the other committee members into believing that the contracts were legitimate; and he could direct the committee secretary to file a false post-election expenditure report. Without Jones, this scheme never could have happened. The enhancement was justified.

IV.

For these reasons, we affirm.