NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0262n.06

No. 21-5543

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 30, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE WESTERN |
| JOSHUA BEASON, | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
|  | ) | OPINION |
|  | ) | |

Before: CLAY, ROGERS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, J., delivered the opinion of the court in which ROGERS, J., joined. CLAY, J. (pp. 6–11), delivered a separate dissenting opinion.

KETHLEDGE, Circuit Judge. Police arrested Joshua Beason and his cousin after they robbed three convenience stores. Beason spoke to his aunt every day during his pre-trial confinement, and then pled guilty without a plea deal. He now says that his family coerced him into pleading guilty, and that his sentence is substantively unreasonable. We disagree and affirm.

I.

On June 28, 2019, Beason, his cousin, Malik Williams, and another man robbed three convenience stores at gunpoint. Beason's two accomplices sustained injuries that evening, and Beason drove them to the hospital. Police officers questioned Beason there; he confessed that he and his accomplices had robbed the stores while armed. Officers recovered clothing that Beason had worn during the robbery and found handguns at one of the crime scenes. The officers then arrested Beason and his two accomplices. A grand jury indicted Beason on three counts of robbery,

in violation of 18 U.S.C. § 1951, and three counts of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c).

After the arrests, Beason's aunt—Williams's mother—called Beason every day, and apparently tried to persuade him to take the responsibility for the robberies and exonerate Williams. The government recorded these phone calls and shared them with Beason's counsel. Beason soon told his counsel that he wanted to plead guilty without a plea deal. Beason's counsel advised otherwise, telling Beason that Williams's family was "throwing [Beason] under the bus" to save Williams. Beason nonetheless insisted that he would plead guilty. His counsel then requested that the court conduct Beason's plea-change hearing in person.

At the hearing, in response to questions from his own counsel, Beason confirmed that he was "adamant about not going to trial," and that his counsel had explained to him that "the government had a strong case against" him. Beason added that "I'm just trying to do the right thing and get this over with"; and that, "[i]f I'm going to trial it's making it worse on myself and I don't want that."

Counsel also questioned Beason specifically about his phone conversations with his aunt. Beason confirmed that he talked to his aunt "every day" and that his conversations with her did not "have anything to do with [his] decision" not to go to trial.

The court then called counsel to chambers, where the court said, "I may have a defendant who insists upon pleading[,] but I'm not comfortable with it." Counsel told the court:

> I have discussed this case with my client in detail in terms of the evidence that we're facing, time that he's possibly looking at, openly discussed with him that his family is throwing him under the bus. I've made no bones about this. "They are sacrificing you to save their own son." I've told him that, "can't you see what's happening here," and he's adamant about going forward with this plea. He said, "I'll only talk about what I did. I will not talk about what he did. I will not testify."

Counsel also added, "I've told him a hundred times, and if he's making an informed decision, I don't see that the court has no alternative but to go forward . . . . That's his business. He has a right to do that."

Back in court, Beason confirmed that he understood his right not to plead guilty, and that his guilty plea meant there would be no trial. The court asked Beason whether he knew the maximum sentence he would face if he pleaded guilty, to which Beason replied: "That's what I'm owning up to. . . . I'm owning up to my roles and I got to respect it." Finally, the judge asked Beason whether anybody had made him any promises or assurances to persuade him to plead guilty, and whether anybody had threatened or coerced him into his plea. Beason responded "no" to all those questions and affirmed that his decision to plead guilty was voluntary. The court then accepted Beason's guilty plea.

Later, at sentencing, the district court judge noted that the § 924(c) convictions mandated a minimum of 252 months' imprisonment. The Sentencing Guidelines also provided a range of another 41 to 51 months for the § 1951 convictions. The district court weighed the § 3553(a) factors and sentenced Beason to 41 months' imprisonment for his § 1951 convictions, which made for a final sentence of 293 months' imprisonment followed by three years of supervised release. This appeal followed.

## II.

Beason argues that his guilty plea was involuntary and unknowing, and that the court accepted the plea in violation of Criminal Rule 11. Beason made no objection to the plea colloquy, so we review both claims for plain error. *United States v. Pitts*, 997 F.3d 688, 701 (6th Cir. 2021).

"A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently by the defendant." *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). We look at the totality of

the circumstances to determine whether the guilty plea was voluntary. *Brady v. United States*, 397 U.S. 742, 749 (1970). A plea is involuntary when, for example, it results from "actual or threatened physical harm," "mental coercion overbearing the will of the defendant," or fear that makes the defendant unable rationally to weigh the decision to plead guilty. *Id.* at 750.

Here, the record does not show that anybody threatened Beason, overbore his will, or made him unable rationally to decide whether to plead guilty. *Id.* To the contrary, the record makes emphatically clear that Beason's decision to plead guilty was his own. And that decision was hardly unreasonable, given that he had already confessed to the crimes. Moreover, his aunt's putative influence went only to whether Beason cooperated with the government in the prosecution of his codefendants—not to whether he pled guilty. The district court did not plainly err when it found that Beason entered his plea knowingly, voluntarily, and intelligently.

Beason similarly argues that the district court violated Rule 11 when it accepted his plea. Rule 11 requires the district court, among other things, to "address the defendant personally . . . and determine that the plea is voluntary[.]" Fed. R. Crim. P. 11(b)(2). Here, the district court asked counsel whether the plea was voluntary, and then addressed Beason directly: the court explained the charges and Beason's options, and asked Beason whether anybody had threatened or coerced him into pleading guilty. Beason explained that he wanted to "own up" to his actions and affirmed that nobody had forced him to enter his plea. The court did not plainly err when it accepted this answer.

Beason also challenges his sentence as substantively unreasonable. We review that issue for abuse of discretion. *United States v. Coppenger*, 775 F.3d 799, 802 (6th Cir. 2015). "A claim that a sentence is substantively unreasonable is a claim that a sentence is too long[.]" *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). A defendant prevails on this claim when the district

court chooses the sentence "arbitrarily," bases the sentence on "impermissible factors," fails to consider the "pertinent § 3553(a) factors," or gives an "unreasonable amount of weight" to any given factor. *United States v. Robinson*, 892 F.3d 209, 213 (6th Cir. 2018) (internal citation omitted). Sentences that fall within the Guidelines range are presumptively reasonable. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008).

Beason argues that the 293-month sentence was too long for the crimes he committed. But 252 months of that sentence were mandated by statute; and the district court imposed a sentence at the lowest end of the Guidelines range on the remaining convictions. It did not abuse its discretion in doing so. *Vonner*, 516 F.3d at 389. Nor has Beason shown that the district court committed plain error in any other respect with regard to his sentence.

The district court's judgment is affirmed.

CLAY, Circuit Judge, dissenting. Despite having reason to believe that Defendant Joshua Beason's aunt was coercing him to plead guilty, the district court did not ask Beason about this coercion. By failing to meaningfully inquire into the voluntariness of his plea, the district court violated Federal Rule of Criminal Procedure 11. When a district court does not comply with Rule 11, this Court must vacate the guilty plea and remand to allow the defendant to plead anew. *See McCarthy v. United States*, 394 U.S. 459, 463 (1969). Therefore, I respectfully dissent.

Beason was raised alongside his cousin, Malik Williams, by his aunt and uncle (Williams' parents). Beason is very close with his aunt, and they talk every day. On June 28, 2019, Beason, Williams, and a third associate were arrested and charged in connection to three back-to-back armed robberies in the Memphis area. After his arrest, Beason continued to speak with his aunt every day while he was in jail. Beason ultimately pleaded guilty to three counts of aiding and abetting robbery under 18 U.S.C. § 1951 and three counts of aiding and abetting in the use, carrying, or brandishing of a firearm during a crime of violence under 18 U.S.C. § 924(c).[1]

A guilty plea must be a "voluntary expression of [the defendant's] own choice." *Brady v. United States*, 397 U.S. 742, 748 (1970). For a plea to be voluntary, it must not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant." *Id.* at 750. To determine whether a plea was entered voluntarily, courts must consider "all of the relevant circumstances surrounding [the plea]." *Id.* (citing *Haynes v. Washington*, 373 U.S. 503, 513 (1963)). Rule 11 safeguards this constitutional protection by creating specific procedures that district courts must follow before accepting a guilty plea. *See McCarthy*, 394 U.S. at 465. Rule 11 provides that: "Before accepting a plea of guilty . . . the court must address the defendant

---

[1] Although the government offered to negotiate a more favorable plea deal on the condition that Beason cooperate against his codefendants, Beason refused to cooperate against his cousin.

personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises." Fed. R. Crim. P. 11(b)(2). When a district court fails to follow Rule 11, "a defendant is entitled to plead anew." *McCarthy*, 394 U.S. at 463.

According to Beason, the district court "plainly erred in accepting [his] plea without making an adequate determination that the plea was voluntary." (Def. Br. at 11. 17.) To analyze this argument, a summary of the change of plea hearing is necessary. The judge began the colloquy with standard questions. Some of the standard questions seemed to confuse Beason, so the court allowed defense counsel to step in and question him. Defense counsel proceeded to ask Beason whether they had reviewed discovery, whether they discussed the strength of the evidence against him, and whether Beason knew how much prison time he faced. Towards the end of these questions, defense counsel asked Beason:

> [Defense Counsel]: . . . [Y]our conversations with the codefendant's mom [(*i.e.* Beason's aunt)], does that have any bearing on your decision in this case?
>
> The Defendant: What do you mean by that?
>
> [Defense Counsel]: Does that have anything to do with – without asking you specifics about the conversation, does your conversation with the codefendant's mom have anything to do with your decision as to whether you want to go to trial or not?
>
> The Defendant: No, sir.
>
> [Defense Counsel]: But you talk to her every day?
>
> The Defendant: Yes, sir.

(Plea Hr'g Tr., R. 123, Page ID #332–33.) Immediately after this exchange, the judge asked to see the lawyers in chambers. Everyone in chambers—the prosecutor, defense counsel, and the district judge—expressed concerns about the voluntariness of Beason's plea, and they discussed these concerns at length. But Beason was not present.

During this sidebar, the attorneys referenced phone calls between Beason and his aunt. The content of those calls is not in the record, but the in-chambers discussion makes it clear that

Beason's aunt had a lot of sway over Beason's decisions, and she was seemingly pressuring him not to go to trial and not to cooperate against his cousin.[2] Defense counsel outlined just how intense this pressure was, stating: "[I]t is clear that [his aunt and uncle] are doing everything possible to try to save their own son and trying to coerce my client into taking responsibility for everything that happened here and exonerate their son." (*Id.* at Page ID #336.) The prosecutor agreed saying, "we listen and we know the influence that [his aunt] has." (*Id.* at Page ID #335.) Considering such evidence, the judge found it difficult to determine whether Beason's plea was truly voluntary, stating: "I'm worried that the one question, that it's made freely and voluntarily, I'm not sure it is because of the coercion." (*Id.* at Page ID #337.) Accordingly, the judge was hesitant to accept the plea.

Ultimately, defense counsel assured the judge that Beason knew that he was being used by his aunt, and that he nonetheless wanted to plead guilty:

> His aunt is the closest family that he has got. . . . [H]e's being used and I know he's being unduly influenced, but if that's what he chooses to do I don't know how to do anything about it. . . . Because I know that the decision that he's making is not the best decision for him. I know that he's being unduly influenced, but I don't know that there's anything that we can do about it.

(*Id.* at Page ID #336.) The in-chambers discussion concluded as follows:

> [Prosecutor]: . . . I certainly believe that his plea is knowing and it's voluntary, and the coercion is not any threats. It may be . . . sentimental commitment because they stepped in the place of his mom and dad. . . .
>
> The Court: Well, I can't look for much more than that.

---

[2] The majority concludes, without citation, that Beason's aunt merely pressured him not to cooperate against his cousin. But, without more information about what his aunt said to him, this assumption is without support. The parties seemed to agree that Beason's aunt was pressuring him not to cooperate *and* not to go to trial at all. According to the prosecutor, who summarized some of the phone calls, Beason's "aunt and his cousin seem[ed] to think it[] [was] best that the cousin not have [Beason] there" at trial. (Plea Hr'g Tr., R. 123, Page ID #335.)

> [Defense Counsel]: He's decided that he wants to take one for the team. That's his choice.
>
> The Court: All right. All right. Let's go back.

(*Id.* at Page ID #342–43.)

After returning to the courtroom, the plea colloquy continued without any deviation from the usual script. The judge only asked Beason two questions about the voluntariness of his plea:

> The Court: . . . I want to make sure that no one has made any promises or assurances to you to persuade you to enter a guilty plea here today? Has anyone done that?
>
> The Defendant: No, sir.
>
> The Court: Has anyone threatened or coerced you or in any way to persuade you to plead guilty here today?
>
> The Defendant: No, sir.

(*Id.* at Page ID #358.) The judge then found that Beason's plea was voluntary and accepted the plea.

Beason argues that the district court violated Rule 11 because, even after acknowledging that his aunt coerced him to plead guilty, the district court never asked him about this issue. He believes that the district court "should have engaged in a more thorough examination to determine whether [his] plea was in fact voluntary." (Def. Br. at 18.) I agree.

Under Rule 11, district courts must "*address the defendant personally in open court* and determine that the plea is voluntary." Fed. R. Crim. Pro. 11(b)(2) (emphasis added). When the district court has evidence suggesting that the plea is involuntary, then it has a duty to "make an additional inquiry regarding" that evidence. *United States v. Sawasky*, 578 F. App'x 475, 479 (6th Cir. 2014) (quoting *United States v. Winnick*, 490 F. App'x 718, 719–20 (6th Cir. 2012)). Indeed, "the Rule 11 inquiry is not a rote series of questions but instead *must be calibrated to the particular defendant and situation* to ensure that a guilty plea is entered knowingly, voluntarily, and

intelligently." *Id.* (emphasis added). The district court failed to make such a probing inquiry of Beason during the change of plea hearing.

The record indicates that the district judge concluded that Beason's plea was voluntary after hearing from defense counsel and the prosecutor in a closed session. *Beason was not there*. In open court, the district judge only asked Beason two cursory questions about the voluntariness of his plea. Those questions were hardly sufficient to assure that Beason's plea was voluntary when counsel for both sides and the judge all agreed in one another's presence that Beason's aunt pressured or coerced him in some way. The judge never asked Beason about the pressure from his aunt. Therefore, the district court did not satisfy Rule 11's requirement to ask the "critical question[s]" given the circumstances. *Sawasky*, 578 F. App'x at 479 (quoting *Winnick*, 490 F. App'x at 720).

This Rule 11 violation amounted to plain error.[3] "To meet that standard, the error must be 'clear or obvious,' it must affect the defendant's substantial rights, and it must be one that, if left uncorrected, would call the integrity of the judicial proceeding into question." *United States v. Roberts*, No. 21-3151, 2022 WL 1165477, at *2 (6th Cir. Apr. 20, 2022) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). The error was clear and obvious because the court was under an express duty to "address the defendant in open court." Fed. R. Crim. Pro. 11(b)(2). In this case, the district court did not ask Beason a single question about the pressure he received from his aunt. This error effected Beason's substantial rights because, if his plea was involuntary, it would be constitutionally void. *McCarthy*, 394 U.S. at 466. Moreover, making decisions behind

---

[3] When the defendant argues that the district court failed to comply with the procedural requirements of Rule 11, but he did not raise a Rule 11 objection below, this Court reviews for plain error. *United States v. Monie*, 858 F.3d 1029, 1031 (6th Cir. 2017) (quoting *United States v. Mobley*, 618 F.3d 539, 544 (6th Cir. 2010)).

closed doors based on and limited to the attorneys' factual representations—when the court is charged with addressing the defendant directly—is an error that "would call the integrity of the judicial proceeding into question." *Roberts*, 2022 WL 1165477, at *2 (quoting *Puckett*, 556 U.S. at 135).

Without a more probing inquiry into Beason's state of mind when pleading guilty, the district court could not confidently conclude that the plea was voluntary. The result of the Rule 11 violation in this case is that *we do not know* whether Beason's plea was truly voluntary. We only know that his defense counsel thought it was voluntary, as did the prosecutor. But we can only speculate about how Beason's aunt affected his thought process. The district court never asked Beason directly. A logical question would have been, "did your aunt pressure you into pleading guilty today?" Moreover, the district court could have requested the transcripts from the jailhouse phone calls between Beason and his aunt. Those phone calls would have revealed the nature and extent of the aunt's coercion. Yet the district court never asked for more information about these calls. Without these critical pieces of information, this Court can only speculate as to whether Beason made an informed and voluntary decision to plead guilty.

For these reasons, I would vacate Beason's guilty plea and remand to the district court to allow Beason to plead anew or proceed to trial. *See McCarthy*, 394 U.S. at 463.