**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0638n.06

No. 13-1898

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Aug 15, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| PATRICIA MARIE SAWASKY, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

**Before: MOORE and McKEAGUE, Circuit Judges; STAFFORD, District Judge.**[*]

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Patricia Sawasky pleaded guilty to being a felon in possession of a firearm. She argues for the first time to this court that the district court failed to ensure that she entered into the plea agreement knowingly and voluntarily, as required by Federal Rule of Criminal Procedure 11. Sawasky asks us to vacate the plea or, in the alternative, remand the case to the district court to determine whether her plea was informed, knowing, voluntary, and intelligent. We conclude that the district court did not commit plain error, and **AFFIRM** the conviction.

**I. BACKGROUND**

Sawasky's argument focuses on her mental-health issues at the time that she entered the plea agreement, and for that reason we review her health history. In 2001, Sawasky suffered a brain aneurysm that caused a stroke, resulting in significant brain damage. After the aneurysm,

---

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

she began suffering from seizures. She was prescribed Lamictal and Topomax to treat the seizures, but the medications do not fully control the seizures and she suffers seizures approximately twice a week. Sawasky has also suffered from depression since the aneurysm. R. 33 (Pre-Sentence Report at ¶ 42) (Page ID #88). In 2002, Sawasky was hospitalized after an alleged suicide attempt where she ingested approximately fifty tablets of her prescription medication. She has been treated at Hiawatha Behavioral Health in Sault Ste. Marie, Michigan, for mental health issues since 2002. Sawasky meets with a psychiatrist once a month for medication management. She was prescribed Ativan and Effexor to treat the symptoms of her depression, and she describes the medication as "moderately effective in alleviating her symptoms." *Id.* at ¶ 44 (Page ID #89). Sawasky's doctor reported that she was also prescribed Celexa. R. 34-1 (Meeker Letter at 1) (Page ID #104).

In a letter provided to the probation officer preparing the Pre-Sentence Report, Sawasky reported that after the stroke:

> Life changed drastically in my ability to understand or comprehend the simplest task. I lost my mental stability; I had to grow up again in every sense. I completely lost use of the left side and lost control of my tongue, which affects my speech. I shake constantly. I am under constant medical and mental health supervision. I am no longer able to work and receive Social Security Disability. Due to extensive brain damage I lost my friends; this was the hardest part of recovery.

R. 33 (Pre-Sentence Report at ¶ 16) (Page ID #83). Sawasky did not have a criminal record before the aneurysm. In 2005, Sawasky was convicted in Michigan state court of felony drug crimes related to her distribution of morphine. *Id.* at ¶ 30 (Page ID #85). In 2008, Sawasky was

convicted in Michigan state court of tampering with evidence and possession of marijuana. *Id.* at ¶ 31, 32 (Page ID #85–86). At the time of the arrest giving rise to this appeal, Sawasky had pending charges under Michigan law for conducting a criminal enterprise, marijuana delivery/manufacture, and child abuse (involving exposure to marijuana). *Id.* at 36 (Page ID #86).

The events giving rise to this appeal occurred on October 4, 2012, when the Bay Mills Police Department executed a search warrant at the home of Jimmie Miller, Sawasky's boyfriend. The police recovered thirteen firearms from the common living room and bedroom, two of which were classified as antiques and so were not considered "true firearms." *Id.* at ¶ 11 (Page ID #81). Due to Sawasky's prior felony conviction, she was charged with being a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1), 921(a), and 924(a)(2), and assaulting, resisting, or impeding an officer in violation of 18 U.S.C. § 111(a)(1), (b). R. 1 (Indictment at 1–3) (Page ID #1–3). In an interview with FBI agents, Sawasky admitted knowing that Miller had a gun cabinet in the common area but denied knowing about the guns in the bedroom. She also stated that "her fingerprints would likely be found on the Smith & Wesson, Model 500, .50 caliber magnum revolver, serial number CHZ3598, as she picked it up to look at it when Mr. Miller first purchased the gun." R. 33 (Pre-Sentence Report at ¶ 12) (Page ID #81).

Sawasky was arraigned on December 18, 2012 in front of a magistrate judge. The following colloquy occurred towards the beginning of the arraignment:

3

> THE COURT: Have you taken any drugs or alcohol that would affect your ability to understand what's occurring here in court today?
> DEFENDANT SAWASKY: No, sir.
> THE COURT: Are you suffering from any physical or mental problems that would affect your ability to understand what's occurring here in court today?
> DEFENDANT SAWASKY: I have severe depression going on, sir.
> THE COURT: Okay. Has this been diagnosed before?
> DEFENDANT SAWASKY: Yes, it has. It stems from a brain aneurysm that I had.
> THE COURT: All right. Do you take medication for this?
> DEFENDANT SAWASKY: Yes, sir, I do.
> THE COURT: Have you been getting your medication?
> DEFENDANT SAWASKY: Yes, sir.
> THE COURT: How is that affecting your ability to understand what's occurring here in court today?
> DEFENDANT SAWASKY: I get messed up in the head sometimes.
> THE COURT: All right. Is there anything that's happened so far you have not been able to understand?
> DEFENDANT SAWASKY: Well, just a couple things that I was talked to about, but my lawyer explained them all to me so that I could understand what it was.
> THE COURT: All right. If at any time something occurs here in court that you don't understand or you want to take a break and talk to your attorney, let me know. All right?
> DEFENDANT SAWASKY: Okay. Thank you.

R. 42 (Arraignment Tr. at 3–4) (Page ID #188–89).

On February 21, 2013, Sawasky pleaded guilty to being a felon in possession of a firearm in front of the same magistrate judge. R. 23 (Plea Agreement at1) (Page ID #36); R. 40 (Change of Plea Tr. at 10) (Page ID #126). The following colloquy occurred at the beginning of the proceeding:

> THE COURT: If at any time something occurs here that you don't understand or I start to go too fast, let me know. I'll slow down or I'll give you a chance to talk to your attorney, okay?
> DEFENDANT SAWASKY: Okay.

4

> THE COURT:  Are you suffering from any physical or mental problems today that would affect your ability to understand what's occurring here in court?
> DEFENDANT SAWASKY:  No, Your Honor.
> THE COURT:  Have you taken any drugs or alcohol that would affect your ability to understand what's occurring here in court?
> DEFENDANT SAWASKY:  No, Your Honor.

R. 40 (Change of Plea Tr. at 3–4) (Page ID #119–20).  The magistrate judge issued a two-paragraph Report and Recommendation recommending that Sawasky's guilty plea be accepted. R. 21 (Report and Recommendation at 1–2) (Page ID #33–34).  Sawasky did not file any objections to the Report and Recommendation.  The district judge adopted the report and recommendation and accepted Sawasky's guilty plea.  R. 24 (Approval Order at 1) (Page ID #46).

The Pre-Sentence Report calculated a recommended Sentencing Guidelines range of fifty-seven to seventy-one months of imprisonment.  R. 33 (Pre-Sentence Report at ¶ 52) (Page ID #91).  Sawasky moved for a downward departure based on diminished capacity pursuant to United States Sentencing Guidelines § 5K2.13, and a downward variance pursuant to 18 U.S.C. § 3553.  R. 34 (Sentencing Mem. at 2, 4) (Page ID #96, 98).  Along with the Sentencing Memorandum Sawasky submitted a letter from her doctor at Hiawatha Behavioral Health, stating that Sawasky "has a longstanding history of significant depressive disorder as well as mood disorder secondary to general medical condition"; has experienced a "decline in functioning as well as mood" since the brain aneurysm in January 2001, including seizures; and "[s]uch injuries can affect judgment, insight, and mood."  R. 34-1 (Meeker Letter at 1) (Page ID #104).  The doctor reported that Sawaksy's current medications were Ativan, Celexa, and Effexor. *Id.*

At the June 18, 2013 sentencing hearing, the district court noted that Sawasky's criminal record did not begin until after her brain aneurysm, and cited the letter from her doctor identifying a decline in functioning and mood after the aneurysm. R. 41 (Sentencing Tr. at 25) (Page ID #176). The court concluded that "I think, on balance, that there is a decline in mental capacity, and it has not been caused by the drugs" and granted the motion for a downward departure under § 5K2.13. *Id.* at 26 (Page ID #177). Because Sawasky did not own or use the guns and admitted to handling only one gun, the district court also granted the motion for a downward variance. *Id.* at 27 (Page ID #178). The district court sentenced Sawasky to twenty-four months of imprisonment, followed by two years of supervised release. *Id.* at 28 (Page ID #179); R. 36 (Judgment at 2, 3) (Page ID #107, 108).

Sawasky filed a timely notice of appeal.

## II. ANALYSIS

Sawasky argues that the district court failed to conduct a proper inquiry, as required by Federal Rule of Criminal Procedure 11 ("Rule 11"), into whether she could knowingly and voluntarily plead guilty, in light of her use of prescription medication for depression. Because Sawasky did not raise this objection in the district court, and because both parties agree that plain-error review applies, we review for plain error. *United States v. Hogg*, 723 F.3d 730, 737 (6th Cir. 2013); *United States v. Williams*, 641 F.3d 758, 763 (6th Cir. 2011) ("even though plain-error review might have been available for this claim, we will not apply the plain-error standard unless requested to do so by one of the parties."). "[I]f a defendant 'seeks reversal of

his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, [he] must show a reasonable probability that, but for the error, he would not have entered the plea.'" *Hogg*, 723 F.3d at 737 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)).

Rule 11 requires that "[b]efore accepting a plea of guilty or nolo contendere, the court must . . . determine that the plea is voluntary." Fed. R. Crim. P. 11(b)(2). "[A]lthough the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *McCarthy v. United States*, 394 U.S. 459, 465 (1969) (footnote omitted). "A defendant who enters [a guilty plea] simultaneously waives several constitutional rights . . . . For this waiver to be valid under the Due Process Clause, it must be an intentional relinquishment or abandonment of a known right or privilege. Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Id.* at 466 (internal quotation marks and citation omitted).

The district court must exercise particular care to ensure that a guilty plea is knowing and voluntary when the defendant has recently consumed a potentially impairing substance. "Once the district court learns that a defendant has recently ingested a substance capable of impairing his ability to knowingly and voluntarily plead, it must make an additional inquiry regarding the

defendant's competence." *United States v. Winnick*, 490 F. App'x 718, 719–20 (6th Cir. 2012)[1]

(citing *United States v. Parra-Ibanez*, 936 F.2d 588, 596 (1st Cir. 1991); *United States v. Cole*,

813 F.2d 43, 46 (3d Cir. 1987)). *Winnick* reflects that the Rule 11 inquiry is not a rote series of

questions but instead must be calibrated to the particular defendant and situation to ensure that a

guilty plea is entered knowingly, voluntarily, and intelligently.

> In *Winnick*,
>
> [T]he district court asked Winnick whether he was under the influence of any drugs or alcohol. Winnick answered that he had taken his 'psych meds' the night before. The district court responded, '[m]ay I assume, sir, that those medications help you understand the proceedings?' Winnick answered, 'Yes, ma'am.' The district court then asked defense counsel whether he thought Winnick understood what was happening during the plea colloquy. Defense counsel said yes. Winnick said later in the colloquy that he understood everything in the plea agreement.

*Id.* at 719. We concluded that the inquiry complied with Rule 11 because when the district court

learned that Winnick had taken medication, the district court asked the "critical question" of

whether Winnick's psychiatric medications helped him understand the proceedings.

Additionally, we noted that "there [wa]s no indication here that the district court had any

knowledge of the defendant's history of mental illness at the time of the plea colloquy" and

Winnick's behavior did not suggest that he was not competent or was not entering his guilty plea

knowingly and voluntarily. *Id.* at 720.

---

[1]"We recognize that our unpublished opinions carry no precedential weight; they often do, however, carry persuasive weight." *United States v. Webber*, 208 F.3d 545, 551 n.3 (6th Cir. 2000).

Unlike Winnick, Sawasky denied "suffering from any physical or mental problems today that would affect your ability to understand what's occurring here in court" and denied "hav[ing] taken any drugs or alcohol that would affect your ability to understand what's occurring here in court." R. 40 (Change of Plea Tr. at 3–4 (Page ID #119–20). During the change-of-plea hearing she never stated that she had recently taken medication.

Sawasky argues that even though at the change-of-plea hearing she denied having taken drugs that would affect her ability to understand the change-of-plea proceeding, the magistrate judge was nonetheless obligated to conduct a more significant inquiry into her competence based on her statements at arraignment that she took depression medication that sometimes made her "messed up in the head." However, approximately two months had elapsed between the arraignment and the change-of-plea hearing. At the change-of-plea hearing, Sawasky not only denied having taken drugs or alcohol that affected her ability to understand the proceeding, but also denied suffering from a mental problem that affected her ability to understand the proceeding. Additionally, Sawasky does not identify anything in her demeanor or behavior that should have signaled to the district court that she did not understand the proceeding. Further, during the change-of-plea hearing, Sawasky's attorney did not signal any concern about his client's ability to understand the proceedings. Under these circumstances, the district court's failure to conduct a more in-depth inquiry into whether she had consumed medication that impaired her judgment was not plain error.

Sawasky argues that the magistrate judge erred by asking generally about "drugs or alcohol" and not specifically about "medicine" or "prescription drugs." Appellant Br. at 30. She argues that "[t]he phrase 'drugs or alcohol' would lead many laypeople to believe that the judge was inquiring about illegal drugs, not properly-taken prescription medication." *Id.* Given that neither Rule 11 nor our cases impose a specific requirement on the district court to ask whether a criminal defendant recently consumed medication, the magistrate judge's failure to ask specifically whether Sawasky had consumed "medication" was not plain error.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** Sawasky's conviction.