**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0655n.06

No. 13-5667

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 22, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| WALTER CARDIN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: COLE, Chief Judge; ROGERS and ALARCÓN[*], Circuit Judges.

ALARCÓN, Circuit Judge. Defendant-Appellant Walter Cardin appeals from his conviction and his sentence for eight counts of major fraud against the United States in violation of 18 U.S.C. § 1031(a). He was convicted for improperly classifying work-related injuries occurring at Tennessee Valley Authority ("TVA") nuclear power plants in order for his employer, Stone & Webster Construction, Inc. ("S&W"), a subsidiary of The Shaw Group ("Shaw"), to receive safety bonuses from the TVA. Cardin challenges the district court's acceptance of his waiver of conflict-free counsel, the sufficiency of the indictment, the sufficiency of the evidence, and the substantive reasonableness of his sentence. For the reasons below, we affirm Cardin's conviction and his sentence.

---

[*] The Honorable Arthur L. Alarcón, Senior Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Since we have concluded that the issues raised do not present novel issues requiring publication of our opinion, we set forth only those facts necessary to address the parties' arguments.

**I**.

**A**

The TVA owns and operates three nuclear power plants: Browns Ferry Nuclear Plant near Athens, Alabama, the Sequoyah Nuclear Plant in Soddy-Daisy, Tennessee, and the Watts Bar Nuclear Plant near Spring City, Tennessee. Effective September 2002, the TVA and S&W entered into a contract for S&W to perform maintenance and other services at the plants. The contract provided that S&W could earn various bonus payments if certain performance goals were met. One of the performance goals was tied to personnel safety and was measured by injuries at each plant. If S&W kept injury numbers and rates below certain levels, it would receive bonus payments. Specifically, S&W's eligibility for bonuses turned on its "recordable injuries" and "lost time injuries," as defined by Occupational Safety and Health Administration ("OSHA") regulations.

Starting in March 2003, S&W employed Cardin as a medical case manager at the Browns Ferry site. In part, Cardin was responsible for treating injured employees at the site, documenting the injuries, and recommending OSHA classifications for the injuries, including whether such injuries were recordable. His responsibilities later expanded to include treating, documenting, and recommending OSHA classifications of injuries to employees at the Sequoyah and Watts Bar sites.

**B**

In September 2006, during the Government's investigation of S&W, Shaw retained Attorney Bruce A. Gardner to serve as Cardin's counsel.

On February 11, 2009, Shaw terminated Cardin's employment. In its termination letter, Shaw offered to provide Cardin with "special additional benefits, which would not otherwise be available to you, but only if you sign the attached Separation and Release [Agreement (the "Agreement")] in which you give up certain rights that you may have to sue" Shaw. In pertinent part, in the Agreement, Shaw promised to indemnify Cardin for certain legal fees and expenses related to this case:

> [Shaw] will indemnify you for reasonable legal expenses incurred in connection with the ongoing investigation by the TVA Office of Inspector General concerning matters that occurred during your employment with [Shaw] until such time, if any, that your interests become in conflict with the interests of [Shaw]. Upon a determination by [Shaw] that your interests are in conflict with [Shaw], [Shaw] will give you thirty (30) days notice of its intention to cease further indemnification. At the conclusion of such 30-day period any additional legal fees will be at your own expense.

The Agreement also included the following limitation:

> "Confidential Information" means all information known by you as a result of your employment with the Company, including but not limited to, (1) the Company's legal, administrative, safety and financial matters, and (2) the internal administrative and financial operations of the Company and any of the business related to the Company. You agree that all "confidential Information" that you know was received in strictest confidence, and you promise that you will not disclose any portion or any part of the "Confidential Information" to anyone for any reason.

The Agreement did not expressly address the scope of this limitation in light of the Government's

"ongoing investigation." Cardin executed the Agreement on February 22, 2009.

**C**

In late 2011, in his original indictment, a grand jury charged Cardin with multiple counts of

major fraud against the United States in violation of 18 U.S.C. § 1031(a) and other crimes. On May

21, 2012, the Government filed a pretrial "motion for judicial inquiry" "to determine if a conflict

of interest exists in the representation of the defendant, Walter Cardin, and his retained counsel,

Bruce A. Gardner." The Government asserted that there may be "several potential areas of conflict

regarding the [A]greement and the representation." It stated, "Defense counsel may face a 'Hobson's

choice' of aggressively pursuing a defense that the company (then [S&W]) was to blame, or in the

alternative, defense counsel could fail to aggressively assert that defense based upon the fee

arrangement set forth in the [A]greement." For example, the Government pointed out that "in

December, 2008, [S&W] entered into an agreement with the United States and the [TVA] for a

substantial sum in order to settle a claim related to this case" and, "[w]hile [S&W] did not admit

wrongdoing, it is certainly possible that the defendant would attempt to use this settlement to his

advantage."[1] The Government also explained, certain defenses "may require the parties to present

evidence and information concerning 'confidential information' the defendant had access to as an

---

[1] In December 2008, S&W entered into an agreement with the United States and the TVA, in which S&W did not admit wrongdoing, for a substantial sum in order to settle a claim related to this case.

employee" and "[i]f such a situation should occur, the defendant may lose the services of his present defense counsel as the prosecution proceeds."

On June 27, 2012, the district court held a hearing on the Government's motion. In a lengthy colloquy, the court questioned Cardin regarding his understanding of the potential for conflicts stemming from his representation by Gardner during pretrial, trial, sentencing, and post-sentencing. During the questioning, Cardin explained that he believed the confidential-information part of the Agreement covered trade secrets and other proprietary information only and that that part of the Agreement did not prevent him from presenting a defense. At one point, Cardin also mentioned that he had "had a couple of strokes in the last couple of years" and asked the court to "be patient with me." At the end of the colloquy, Cardin opted to keep Gardner as counsel and waived his right to conflict-free representation. He stated that he "can't guarantee" he would not complain about Gardner's representation, "but I understand that you've given me a choice here, and I have explained to you my choice."

On July 16, 2012, the district court denied the Government's motion to the extent that it sought to disqualify Gardner. The court "conclude[d] a potential conflict exist[ed] between Defendant and his counsel, but accept[ed] Defendant's waiver of that potential conflict." The court specifically found that "there is a serious potential for conflict at every stage of the trial," because "Cardin may want to offer defenses inculpating Shaw in an effort to exculpate him," but "[i]n light of the Agreement, Gardner arguably could neither support such defenses nor vigorously cross

examine representatives of Shaw." Nevertheless, the court held that Cardin's waiver of conflict-free representation was permissible and knowing and voluntary.

**D**

On July 24, 2012, in a superseding indictment, a grand jury indicted Cardin on eight counts of major fraud against the United States in violation of 18 U.S.C. § 1031(a). 18 U.S.C. § 1031(a) provides, "[w]hoever knowingly executes, or attempts to execute, any scheme or artifice with the intent[] to defraud the United States[] or to obtain money or property by means of false or fraudulent pretenses, representations, or promises, in any . . . [government] contract" with a value of $1 million or more shall be guilty of an offense against the United States. In general, the grand jury charged Cardin for his role in falsely reporting, erroneously classifying, and intentionally omitting material facts regarding the nature and severity of work-related injuries occurring at TVA nuclear power plants in order for his employer, S&W, to receive safety bonuses from the TVA at the Browns Ferry Nuclear Plant between 2003 and 2006, the Sequoyah Nuclear Plant between 2003 and 2006, and the Watts Bar Nuclear Plant between 2003 and 2005.

The superseding indictment included an introduction, a background, and a section describing the "scheme and fraud" to defraud the TVA. In part, each count charged Cardin with "knowingly and willfully execut[ing] and attempt[ing] to execute a scheme and artifice with intent to defraud the United States." None of the individual counts, however, expressly incorporated the superseding indictment's description of the scheme.

**E**

Cardin's jury trial lasted ten days. During trial, the Government presented the testimony of over 50 witnesses. The Government called almost 40 injured S&W employees and, through the testimony of a TVA agent, submitted evidence regarding almost 40 more injured S&W employees. In general, the Government presented evidence to show that the injuries to all of these S&W employees were "recordable" under OSHA standards, that Cardin should have recorded them, and that, as a result, S&W should not have received the safety bonuses that it collected pursuant to its agreements with the TVA.

After the close of the Government's case in chief, the district court *sua sponte* noted:

> And this wasn't raised by the defendant, either in this present motion or before the trial, but I noted that the scheme that is alleged by the government [in the superseding indictment] is not contained in any count; it's just a standalone by some pages, and the counts do not reference or incorporate the scheme or artifice.

The court concluded, though, "Since there has been no challenge before trial . . . I think any deficiencies in the indictment have been waived because they were not raised." Cardin's counsel did not object or file a motion to dismiss the superseding indictment.

Cardin testified as the only defense witness. He testified that he only implemented S&W's protocol for injury classifications; that he was the first part of a three-tiered process, including Peter

Chin, a safety director, to evaluate injuries; and that his superiors were responsible for the misclassifications of employee injuries.[2]

On November 7, the jury found Cardin guilty on all counts.

**F**

After he was convicted, Cardin requested that the district court revoke his waiver of conflict -free representation so that he could seek representation by a federal public defender. He informed the court that Gardner had not asked questions or sought to introduce evidence that he requested during trial, that he did not trust Gardner to represent his interests at sentencing, and that he had had difficulty contacting Gardner after the verdict.

On February 25, 2013, the district court held a hearing on Cardin's request. At the opening of the hearing, Cardin generally explained that he "did not feel" that Gardner "presented an adequate defense" and that he had had communication issues with Gardner since the verdict. The court responded:

> I'm not hearing that there is anything that you've told me that rises to the level of a constitutional conflict of interest problem. I am hearing dissatisfaction, lack of communication, you're not sure he's doing the best job possible. And those are all relevant and legitimate concerns. They're not constitutional, though.

---

[2] On appeal, "[Cardin] concedes that all, or nearly all, of the injuries discussed during the trial were recordable." Appellant's Br. at 12.

The court declined to remove Gardner and explained to Cardin that he may opt to retain other counsel, which may include the appointment of a public defender. Cardin indicated that he would consider his options for counsel going forward, but did not make a decision during the February 25 hearing.

**G**

Cardin's Presentence Report ("PSR") calculated his total offense level as 28, assigned him a criminal history category of I, and determined that he was subject to a guideline range of 78 to 97 months. Cardin's total offense level included a two-level increase for obstruction of justice based on perjurious testimony. Cardin did not file any objections to the PSR. He only requested a variance below the low-end of the guideline range.

At the outset of his sentencing hearing on April 11, 2013, Cardin told the district court that he no longer had any issues with Gardner's representation: "First off, I'd like to thank you for allowing me to have come here back in February to discuss some of the problems. And as Mr. Gardner says, we have amicably addressed those, and we're moving forward."

During the sentencing hearing, the district court imposed a 78-month sentence on each count, to be served concurrently. The court's sentence was based, in part, on a finding that Cardin had knowingly provided false testimony at trial.

**II**

A

Cardin asserts that the district court erred in accepting his waiver and in not disqualifying his trial counsel, Gardner, for two reasons. First, he "denies he was sufficiently competent at the time he told the court that he wished to retain Mr. Gardner" to make a valid waiver of conflict-free counsel.[3] Cardin explains that his history of strokes and his prescription medications "affected his ability to understand/process at the time the depth and range of Mr. Gardner's conflict of interest and how such a conflict could affect his representation." While he admits that "the court did inquire as to whether defendant's medications had an adverse effect on his ability to understand and participate in the proceedings" and that he "answered in the negative" (Appellant's Br. at 126), Cardin argues that "the court erred by not specifically inquiring as to the name of the medications, the dosage, frequency, and their potential and actual effects on defendant."

Second, Cardin contends that the court was required to disqualify Gardner "as a matter of law in order to protect the public interest in adjudicatory integrity." He argues that he was unable to pursue his preferred defense at trial—that he was only "implementing an S&W protocol for injury classifications," which "he believed had been vetted and was legal"—with Gardner serving as his counsel because Shaw was paying Gardner.

---

[3] Cardin does not specify what hearing he is referring to in his briefing. Based on the context of his argument, though, he appears to be referring to the June 27, 2012 hearing on the Government's motion for judicial inquiry.

Cardin states that Gardner's representation prejudiced him because "little or no evidence was presented by the defense of the systemic corporate problems which led to and facilitated the errors in injury classification" and "[t]hese failures left the erroneous impression that the defendant, acting alone, was responsible for the errors put into evidence." He provides three examples of such alleged failures: (i) "there was apparently no mention during the trial of S&W's admission of errors and financial settlement with TVA;" (ii) "[t]here was little or no emphasis of the instances . . . where Mr. Chin overrode Mr. Cardin's recommendations;" and (iii) there was little or no emphasis of the instances "where other S&W employees concurred in [Cardin's] determinations."

In general, in deciding whether to accept a defendant's waiver of conflict-free counsel, a district court must determine (i) whether the defendant's waiver is sufficient and (ii) whether the conflict is of a type which can be waived. *See, e.g.*, *Wheat v. United States*, 486 U.S. 153, 158–64 (1988); *United States v. Swafford*, 512 F.3d 833, 839 (6th Cir. 2008); *United States v. Osborne*, 402 F.3d 626, 631 (6th Cir. 2005); *United States v. Mays*, 69 F.3d 116, 121–22 (6th Cir. 1995). The first inquiry focuses on the specific defendant before the district court. The second inquiry focuses on the integrity of the judicial system generally.

This Court reviews a district court's decision whether to disqualify counsel for abuse of discretion. *See Swafford*, 512 F.3d at 839 ("This Court's standard of review of a district court's decision regarding the disqualification of counsel is a 'generous one.' 'The district court is to be given wide latitude' in making such determinations and a decision will be upheld unless 'arbitrary' or 'without adequate reasons.'" (quoting *Mays*, 69 F.3d at 121); *United States v. Brock*, 501 F.3d

No. 13-5667
*United States v. Cardin*

762, 771 (6th Cir. 2007) ("We review the district court's decision to disqualify [counsel] for abuse

of discretion." (citation omitted)).

**1**

With respect to his ability to make a valid waiver before the district court, Cardin argues that

his waiver was invalid because his history of strokes and use of prescription medications prevented

him from understanding the potential conflicts from Gardner's representation and the potential

consequences of his choice. During the June 27, 2012 hearing on the Government's motion for

judicial inquiry, after Cardin mentioned his medical issues including his strokes, the court engaged

in a dialogue with him in which the court confirmed that Cardin's medications did not affect his

ability to understand, communicate, or make decisions:

> THE COURT: I believe you indicated you are taking some medication.

> THE DEFENDANT: Yes, sir, I am.

> THE COURT: Do those medications have any ability -- any effect on your
> ability to understand what goes on?

> THE DEFENDANT: No, sir.

> THE COURT: Or to communicate?

> THE DEFENDANT: No, sir.

- 12 -

THE COURT: Or your decision-making ability?

THE DEFENDANT: No, sir.

He did not change his answers at any time during the hearing. He also did not inform the court that his past strokes affected these answers. Additionally, after the June 27 hearing, Cardin did not inform the court during his February 25 or April 11, 2013 hearings that his stroke history or prescription medications affected his understanding of the case.

The record of the June 27 hearing is devoid of any indication by Cardin that his medical issues prevented him from comprehending the proceedings generally, the potential conflicts, or the possible consequences. The record reflects that he demonstrated sufficient awareness of the circumstances and ramifications to make an effective waiver. In its Order denying the Government's motion, the court similarly noted, "Despite recovering from a stroke and taking prescription drugs, his answers were thoughtful and coherent." [R. 23, July 16, 2012 Mem. & Order at PageID# 110.] The court had no reason or notice to make a more thorough inquiry. *See United States v. Winnick*, 490 Fed. App'x 718, 719–20 (6th Cir. 2012) (holding, in the context of a Rule 11 plea, "Once the district court learns that a defendant has recently ingested a substance capable of impairing his ability to knowingly and voluntarily plead, it must make an additional inquiry regarding the defendant's competence." (citing *United States v. Parra-Ibanez*, 936 F.2d 588, 596 (1st Cir. 1991); *United States v. Cole*, 813 F.2d 43, 46 (3d Cir. 1987))).

With respect to the district court's acceptance of Cardin's waiver, Cardin suggests that Shaw's payment of his legal fees created a conflict between his counsel's loyalty to him and Shaw that required the court to reject his waiver of conflict-free counsel. Cardin does not explain his argument further. The court considered this issue in depth. It concluded that the Agreement's "conditional indemnification" did not require denial of Cardin's waiver for three reasons. First, as Shaw did here, "it is not uncommon for employers to indemnify employees for legal fees." Second, Cardin's desire to retain Gardner served to "ensure[] a fair trial, and the public's perception [that] such a trial is indeed fair," because "Gardner has been involved in the case since 2006" and "Cardin knows, trusts, and is used to Gardner, and the familiarity and expertise gained over six years cannot be completely imparted to a new attorney." Lastly, emphasizing that "Cardin and Shaw concluded the Agreement after TVA had begun [its] investigati[on]," the court found, "If this sort of conditional indemnification scheme were ruled to create a conflict, all such contracts would lose significant force, and they may harm the public." Cardin does not dispute any of this.

Additionally, the record does not support Cardin's assertion that he was unable to put on a defense in which he claimed that he was only implementing S&W's protocol for injury classifications. As Cardin himself states, he testified, in part, that "his approach to injury classifications was S&W's approach since he was only one of a three person team consisting of himself, an occupationally trained physician, and his supervisor Peter Chin, as well as other S&W supervisors," that Chin "had final authority as to the determination[s]," and that he "was on occasion

'overruled' on his determinations." Appellant's Br. at 117, 118 (citing trial transcript and exhibits). As for S&W's settlement with the TVA, Cardin never explains how he would have used the settlement, how its use would have benefitted him, or how Gardner's non-use of it prejudiced him.

3

In light of the district court's detailed attention to this issue and Cardin's narrow arguments on appeal, the court did not abuse its discretion in accepting Cardin's waiver of conflict-free representation and not disqualifying Gardner on its own.

**B**

Based on the district court's *sua sponte* comments regarding the sufficiency of the superseding indictment, Cardin also asserts that, "for the same reasons raised by the trial court, the indictment failed to properly allege all the necessary elements of the offense ('a scheme') and/or all elements of the offenses were not passed upon by the grand jury." He did not raise this argument before the district court and, on appeal, he does not explain his argument further.

"[F]orfeiture is the failure to make the timely assertion of a right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (citing cases). In general, a party "forfeit[s] review of [an] issue by failing to raise it before the district court." *United States v. Duval*, 742 F.3d 246, 255 (6th Cir. 2014) (citing cases) (holding, in part, that defendants forfeited review of sufficiency of the indictment by failing to raise issue before the district court). Moreover, "a party waives any Rule 12(b)(3) defense,

objection, or request," including "a motion alleging a defect in the indictment," that is not raised before trial, pursuant to Rule 12(e) of the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 12(b)(3)(B), (e). Nonetheless, if the alleged defect is jurisdictional, a party may challenge the sufficiency of an indictment at any time. *See, e.g.*, Fed. R. Crim. P. 12(b)(3)(B); *Duval*, 742 F.3d at 255.

The record reflects that, when the district court *sua sponte* questioned the sufficiency of the superseding indictment, Cardin's counsel did not object, make a motion, or take any other action to indicate that the defense found the superseding indictment defective. Cardin now raises this issue himself for the first time on appeal, but he does not argue that his claim is jurisdictional. As a result, Cardin has forfeited this challenge.

## C

Additionally, Cardin asserts that the trial evidence was insufficient to support his conviction for two reasons. First, he argues that, "while most, if not all, of his injury classifications were erroneous," he had no intent to defraud, he did not knowingly or intentionally misrepresent any material facts, and he did not plan or knowingly participate in any sort of scheme. Cardin explains, "He simply made mistakes, many of which were systemic/recurrent." Second, he contends that "his 'good faith' . . . obviated any fraudulent intent or scheme."

This Court "review[s] *de novo* a challenge to the sufficiency of the evidence supporting a criminal conviction." *United States v. Pritchett*, 749 F.3d 417, 430 (6th Cir. 2014) (citation and

internal quotation marks omitted). "In evaluating a sufficiency of the evidence claim, we must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.*'" *Id.* at 430–31 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). "[T]his court neither independently weighs the evidence, nor judges the credibility of witnesses who testified at trial." *Id.* at 431 (citation and internal quotation marks omitted). "[T]he defendant bears a heavy burden when making a sufficiency of the evidence challenge." *Id.* (citation and internal quotation marks omitted).

Cardin denies that the trial evidence was sufficient to convict him because it reflects mistakes only and not the elements of major fraud. Similarly, he maintains that his subjective good faith negates any possible fraudulent intent. Cardin, however, does not describe why the Government's evidence fails to meet the burden of proof. Rather, to challenge the Government's evidence, he implicitly seeks for this Court to credit his trial testimony. This Court does not judge the credibility of a witness or re-weigh the trial evidence. Viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient to persuade a rational trier of fact that Cardin was guilty of major fraud.

**D**

Lastly, Cardin asserts that his "sentence was unreasonable under the circumstances," even though "the sentence of 78 months was within the guideline range." Specifically, he argues that his

sentence is substantively unreasonable because he "had no criminal history," "served his country honorably in the United States Air force," has a "good character," "received no direct financial benefit from the purported offenses," and, due to the judgment, "lost his ability to practice his EMT/paramedic profession."

"'[A]ppellate review of sentencing decisions is limited to determining whether they are reasonable.'" *United States v. Mackety*, 650 F.3d 621, 623 (6th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 46 (2007)) (internal quotation marks omitted). "A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Jeter*, 721 F.3d 746, 757 (6th Cir. 2013) (citation and internal quotation marks omitted). "A sentence falling within the Guidelines range is presumptively reasonable." *Id.* This Court reviews for reasonableness under the abuse of discretion standard. *Gall*, 552 U.S. at 46, 51.

In imposing its sentence, the district court considered the factors that Cardin raises on appeal. Cardin acknowledged this in his briefing. He points to nothing in the record that suggests the court gave inappropriate weight to relevant sentencing factors or that the sentence imposed was otherwise improper. The court sentenced him to the lowest end of the guideline range, and this sentence is presumptively reasonable. Cardin has not articulated an argument on appeal that rebuts this presumption.

**III**

For the reasons set forth above, we **AFFIRM** Cardin's conviction and his sentence.