NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0512n.06

Case No. 22-3154

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Dec 09, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| MATTHEW DAY, | ) | OHIO |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: READLER, MURPHY, and MATHIS, Circuit Judges.

MURPHY, Circuit Judge. Matthew Day pleaded guilty to drug and firearm offenses. The district court ensured that Day's guilty plea was knowing and voluntary through a standard plea colloquy. Before his sentencing, though, Day wrote a letter to the court suggesting that his attorney had performed deficiently by allowing him to plead guilty despite his mental-health issues. Day did not renew any concerns with his lawyer's performance or with the voluntariness of his plea at sentencing. Day nevertheless argues on appeal that the district court should have raised his competency to plead guilty on its own initiative at that time. Day also argues that his attorney provided ineffective assistance by failing to stop him from pleading guilty. His first argument lacks merit, and his second argument is premature. We thus affirm.

I

In October 2020, the narcotics unit of the police department in Lorain, Ohio, learned from a confidential informant that Day had been selling heroin. The narcotics unit arranged for the informant to make two $40 heroin purchases from Day at Day's apartment. The unit later searched Day's apartment and discovered, among other items, cocaine, a firearm, and ammunition. After his arrest, Day confessed to regularly selling cocaine.

A grand jury indicted Day both for possessing cocaine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), and for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). After requesting and receiving a new lawyer, Day eventually opted to plead guilty to both counts without a plea agreement.

An ordinary plea hearing followed in August 2021. The court asked Day questions designed to ensure that he was voluntarily pleading guilty. Day responded "no" to the question whether he was "under the influence of any type of drugs, alcohol, or medicine that might affect [his] ability to understand these proceedings[.]" Plea Tr., R.39, PageID 202. He responded "yes" to the question whether he understood "the nature of the charges against [him], the two counts to which [he was] pleading guilty[.]" *Id.*, PageID 202–03. He also responded "yes" to the question whether he had talked to his lawyer "about [his] case, about the evidence against [him], possible defenses, witnesses, things of that nature[.]" *Id.*, PageID 203. After an extensive back-and-forth, the district court found that "Day [was] fully competent and capable of entering an informed plea" and that "his plea of guilty [was] a knowing and voluntary plea[.]" *Id.*, PageID 214.

In December 2021, the district court decided to continue Day's original sentencing hearing because Day asserted that he was "hearing voices" at that time. Sent. Tr., R.50, PageID 259. According to Day's presentence report, he also told the probation officer that he had "struggled

2

with paranoid schizophrenia" for years and that he "sometimes" "hears voices." PSR, R.28, PageID 152. Day also told the probation officer that he had not received any of his medications since his arrest and that he would like "mental health treatment." *Id.*

A month later, Day wrote the court "to express how [unsatisfied] [he] currently [was] with" his second lawyer. Letter, R.36, PageID 193. Day noted that it had been "impossible" to contact this attorney and that he had still not received his presentence report or the transcript from his plea hearing. *Id.* Day suggested that his attorney had been "ineffective" for those reasons "as well as the very fact that he allowed" Day to plead guilty while "knowing fully that [Day] was having issues mentally." *Id.*, PageID 193–94. Day ended the letter by asking the court to "instruct" his attorney to provide him with his presentence report and plea-hearing transcript. *Id.*, PageID 194.

At sentencing in February 2022, Day and his attorney appeared to have resolved their differences. Day noted that he had reviewed the presentence report with his attorney, and his attorney noted that they had no objections to it. While arguing over the proper sentence, both sides referred to Day's mental-health struggles. Day's attorney argued that his "psychiatric condition" had prompted his drug use because he had not been receiving the "proper medication" during the COVID-19 pandemic. Sent. Tr., R.50, PageID 259. His attorney further asserted that Day's "medications are doing him very well" and that he can keep his addiction under control with proper treatment. *Id.*, PageID 259–60. The government countered that Day had an extensive criminal history and that others with "mental health issues" do not have the "high rate of recidivism" that Day had shown. *Id.*, PageID 261–62. The district court likewise cited Day's "mental health issues" as a mitigating factor, pointing out that Day had not been on his medication when the probation officer prepared the presentence report but that he was receiving treatment now. *Id.*, PageID 266. Ultimately, the court ordered Day to serve 188 months in prison, a sentence at the

top of his guidelines range. At no point did Day request to withdraw his plea or even imply that his mental-health issues had impaired his ability to plead guilty back in August 2021.

II

On appeal, Day argues that the district court should have reraised at sentencing whether he had voluntarily pleaded guilty. He also argues that his counsel provided ineffective assistance by permitting him to plead guilty despite his mental-health issues. We reject the first claim on the merits and save the second claim for collateral proceedings under 28 U.S.C. § 2255.

A. Knowing and Voluntary Plea

The Due Process Clause prohibits a district court from accepting a criminal defendant's guilty plea unless the defendant knowingly and voluntarily pleads guilty. *Godinez v. Moran*, 509 U.S. 389, 400 (1993). To enter a knowing and voluntary plea, defendants must, of course, be mentally competent—that is, they must be able to reasonably consult with their attorneys about their case and have a rational understanding of their proceedings. *Id.* at 396, 400; *see United States v. Alfadhili*, 762 F. App'x 264, 267 (6th Cir. 2019).

To ensure that defendants have knowingly and voluntarily pleaded guilty, Federal Rule of Criminal Procedure 11(b) requires a district court to ask them a variety of questions. *See United States v. Rodrigues*, 2022 WL 2812887, at *1–2 (6th Cir. July 19, 2022); *United States v. Webb*, 403 F.3d 373, 378–79 (6th Cir. 2005). For example, defendants must acknowledge that they know about the constitutional "right to a jury trial," the "nature of each" offense to which they are pleading guilty, and the "maximum possible penalty" for their offenses. Fed. R. Crim. P. 11(b)(1)(C), (G), (H). The court must also ask defendants whether their "plea is voluntary" and not the result of coercive tactics. Fed. R. Crim. P. 11(b)(2). When a defendant's answers to these questions show that the defendant has knowingly and voluntarily pleaded guilty, the transcript of

the plea hearing will provide a "formidable barrier" to attempts to challenge the knowing and voluntary nature of the plea after the fact. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In this case, the district court engaged in a standard plea colloquy designed to satisfy Rule 11. The court made sure that Day knew of the many constitutional rights that he was waiving by pleading guilty. It made sure that Day was not "under the influence" of drugs or medicine that could affect his ability to voluntarily plead guilty. Plea Tr., R.39, PageID 202. And it made sure both that Day knew the nature of the charges against him and that he had consulted with his attorney about the case. Admittedly, the court never asked Day about his mental health. But Day cites no evidence from the time of the plea hearing that would have put the court on notice of any competency concerns or triggered a duty to ask further questions about the issue. *Cf. United States v. Carter*, 795 F.3d 947, 952–55 (9th Cir. 2015); *United States v. Winnick*, 490 F. App'x 718, 720 (6th Cir. 2012). To the contrary, Day spoke cogently at the hearing. As one of several examples, Day apologized to the court for requesting a second attorney before he decided to plead guilty. He explained: "I just wanted a second opinion. That's all." Plea Tr., R.39, PageID 216; *see Winnick*, 490 F. App'x at 720. Day thus does not argue that the district court's plea colloquy violated anything in Rule 11, and we need not consider when a court has a duty to ask a defendant about mental-health concerns at a plea hearing.

Day instead contends that he put the court on notice that his plea was involuntary five months later. He relies on the letter that he sent to the court suggesting that his counsel had been ineffective by allowing him to plead guilty despite his mental-health "issues." Letter, R.36, PageID 194. At sentencing, though, Day did not express any concerns with his plea or request to withdraw it. So he now argues that this letter required the court—on its own initiative—to order a competency hearing or allow him to withdraw his plea.

5

*Competency Hearing*. Day is correct that a court must order a competency hearing if the court at any time learns of facts that create "reasonable cause to believe" that the defendant is not competent. 18 U.S.C. § 4241(a); *see United States v. Coleman*, 871 F.3d 470, 474–75 (6th Cir. 2017). Our caselaw leaves open whether we review a district court's failure to order this type of hearing for an abuse of discretion or for plain error when, as in this case, the defendant did not request such a hearing in the district court. *See Coleman*, 871 F.3d at 474. We can leave this question open here too because the court did not abuse its discretion (or commit a plain error) in refusing to order a competency hearing. *See id.* Day cites no post-plea-hearing evidence suggesting that he was ever "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a); *see Alfadhili*, 762 F. App'x at 268.

To begin with, Day's letter mentioned his mental-health "issues" only as an afterthought. Letter, R.36, PageID 194. His conclusory statement about those issues did not suggest that he lacked the ability to understand his case or consult with his attorney. *See Alfadhili*, 762 F. App'x at 268. The rest of the letter proved the opposite. Day was complaining about his attorney's failure to consult with him and to give him his plea-hearing transcript and presentence report so that he could prepare for sentencing. The letter thus made clear both that Day knew what was happening and that he was attempting to assist in his defense. A defendant who is mentally incompetent would not normally be able to dispute his attorney's legal competence.

Day's conduct at sentencing likewise showed he was well aware of the proceedings. *See Alfadhili*, 762 F. App'x at 269. His attorney pointed out that he was now on medication. And the fully medicated Day never challenged his plea. Rather, he acknowledged that he had received his presentence report and reviewed it with his attorney. He later apologized for his crimes, noted that

he had pleaded guilty, and asked for mercy. After the court imposed a sentence that was longer than Day had hoped, he also opined: "This isn't right. It's not right." Sent. Tr., R.50, PageID 269. And when the court asked if he would like to appeal, Day said: "I would like to appeal everything." *Id.*, PageID 271.

To be sure, Day's presentence report stated that he had struggled with various mental conditions, including "paranoid schizophrenia," and suggested that he had not been on medication at the time of his plea hearing. PSR, R.28, PageID 152. Yet a defendant's mental illness alone does not automatically signal that the defendant lacks knowledge of the nature of the proceedings so as to necessitate a competency hearing. *See United States v. Miller*, 531 F.3d 340, 349 (6th Cir. 2008). And the district court did not abuse its discretion here because of the mental acumen that Day displayed throughout these proceedings. *See Alfadhili*, 762 F. App'x at 268–69.

*Plea Withdrawal.* Day next suggests that his letter should have led the district court to allow him to withdraw his plea. He cites no caselaw that would require a district court to sua sponte give a defendant the right to withdraw a plea when the defendant has not even moved for that relief. But the government does not dispute Day's ability to raise this argument now or even suggest that we must apply plain-error review. *Cf. United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020); *United States v. Williams*, 796 F. App'x 270, 272 (6th Cir. 2019) (per curiam). So we are content to resolve the claim using our usual withdrawal-of-plea factors that both parties discuss (and our usual abuse-of-discretion standard of review). *See United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994) (listing factors).

Under these factors, the district court would not have abused its discretion in failing to grant a motion to withdraw. *See id.* at 1180. Day did not send his letter to the court until five months after he pleaded guilty—a substantial delay under our caselaw. *See, e.g.*, *United States v.*

7

*Ryerson*, 502 F. App'x 495, 499 (6th Cir. 2012) (per curiam); *United States v. Beasley*, 73 F. App'x 119, 121–22 (6th Cir. 2003); *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (per curiam). He has also provided no explanation why he was incapable of flagging his mental-health concerns at any time earlier (such as by simply claiming that his mental-health issues prevented him from raising the issue for the entire five months). *See Bashara*, 27 F.3d at 1181. Nor has he ever disputed his guilt. *See id.* His plea-hearing transcript also reveals no signs of any mental-health issues at that time. *See id.* And he has had significant experience with the criminal-justice system, as evidenced by the fact that he fell within the highest criminal-history category under the Sentencing Guidelines. *See id.*

### B. Ineffective Assistance

Day alternatively argues that his attorney provided constitutionally ineffective assistance by allowing him to plead guilty despite his mental-health struggles at the time of the plea hearing. We decline to reach this premature argument.

Generally, appellate lawyers should not raise ineffective-assistance-of-trial-counsel claims on direct appeal because the record will not contain evidence that shows what trial counsel did (or did not) do. *See Massaro v. United States*, 538 U.S. 500, 504–05 (2003). Defendants instead should ordinarily wait to raise these claims in a collateral attack under 28 U.S.C. § 2255—a venue in which a defendant can develop outside-the-record facts about counsel's conduct. *See United States v. Turner*, 2022 WL 16584897, at *1 (6th Cir. Nov. 1, 2022) (per curiam) (quoting *United States v. Daniel*, 956 F.2d 540, 543 (6th Cir. 1992)); *see, e.g.*, *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012); *United States v. Williams*, 612 F.3d 500, 508 (6th Cir. 2010). Indeed, a defendant takes a "big risk" by raising this type of claim prematurely. *United States v. Manzano*, 793 F. App'x 360, 367 (6th Cir. 2019). A rejection of the claim on direct appeal could trigger

ordinary preclusion principles that would bar the defendant from reraising it in a § 2255 motion after the necessary factual development. *Id.* We thus will hear an ineffective-assistance claim on direct appeal only in a "rare" case in which the record contains all the facts required to resolve it. *See United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005).

Day's case shows why we have adopted this rule. The record contains almost no facts detailing his mental state at the time of his plea hearing or trial counsel's knowledge of his mental health at that time. It, for example, includes no declaration from Day about how his lack of medication affected his ability to understand his plea proceedings (if at all). It also lacks evidence describing his conversations with counsel or showing that the conversations should have put counsel on notice to flag Day's mental health at the plea hearing. *See Ferguson*, 669 F.3d at 763.

In response, Day asserts that we can hold that his trial counsel provided ineffective assistance now because of Day's letter to the district court and the statements in his presentence report summarizing his mental-health struggles. Yet this barebones evidence falls well short of allowing us to resolve whether counsel performed competently. *See id.* We thus will follow our usual course and give Day the ability to develop the basic facts required to support his ineffective-assistance claim in a § 2255 proceeding. *See Massaro*, 538 U.S. at 505.

We affirm.